JOSIAH H. HENDERSON
v.
JOHN G. MILLER ET AL.

*Sales—Fraudulent Misrepresentations—Replevin—Evidence—Instructions.*

1. In replevin of goods sold, claimed to have been obtained through the purchasers' fraudulent misrepresentations as to their financial condition, it is error to allow plaintiffs, or their agent who sold the goods, to testify as to conversations between the agent and plaintiffs, in the purchasers' absence, concerning their statements.

Henderson v. Miller.

2.  A private memorandum of the purchasers' financial condition, made by a member of plaintiffs' firm when on a visit to them, which is not shown to have been known to, or authorized by them, is not competent evidence.

3.  Nor is it competent to prove a prior fraudulent transaction on their part, with which plaintiffs were not connected.

4.  Evidence of the rating of a merchant by a commercial agency, not shown to have been authorized by him, is inadmissible.

5.  The jury alone are the judges of the credibility of a witness, and an instruction which usurps this function is error.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Bureau County; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. J. A. McKINZIE and R. M. SKINNER, for appellant.

Messrs. NEWTON A. PARTRIDGE and GEORGE W. CRAWFORD, for appellees.

C. B. SMITH, J.  This was an action in replevin prosecuted by John G. Miller & Co. against J. H. Henderson, to recover goods of the value of $2,803.11.  John G. Miller & Co. were wholesale dealers in clothing in Chicago.  Evans & Lindsay were retail dealers in clothing, in Buda, Illinois.  In the spring of 1888, Miller & Co. (appellees) commenced selling Evans & Lindsay clothing; in February they sold them one bill for $145, in April a bill for $690, and in June a small bill of $36. All these sales were on credit and not due until the first of September following.

On the 18th of August, Van Velzer, one of appellees' traveling salesmen, called at the store of Evans & Lindsay for the purpose of selling them more goods.  After making inquiry of the firm of Evans & Lindsay as to their financial standing and ability to pay, and having received assurances from them (as he says) that they then only owed about $600 outside of what they owed appellees, he sold them another bill of goods amounting to $2,800.  The bill was sent to the house of appellees at Chicago, and after Van Velzer had given Mr.

Watt, a member of the firm, and Mr. Dean, cashier of the firm, a statement of what conversation he had with Evans & Lindsay, they were satisfied with the sale and accordingly on the 24th day of August this $2,800 bill of goods was shipped to Evans & Lindsay.

Charles D. Lindsay and John B. Evans composed the firm of Evans & Lindsay; one of them was the son and the other the son-in-law of Charles R. Lindsay, who is the real party defendant in interest in this case.

On the 5th day of September, about ten days after the bill of goods was shipped, Charles R. Lindsay had a judgment confessed for $10,000 against his son and son-in-law (Evans and Lindsay) on two notes, one for $8,500, and one for $1,500, which he claimed was given him for borrowed money which he claimed to have loaned them from time to time to enable the firm of Evans & Lindsay to carry on their business. On the 6th of September executions were issued on this judgment, and levied on this $2,800 bill of goods, which had just been bought of appellees and received at the store, and possession taken by the sheriff, Josiah H. Henderson, and on the 8th of September appellees filed their affidavit and began this replevin suit, claiming the title and right of possession of the goods. The declaration charged the sheriff with wrongfully taking and detaining the goods. The pleas were, 1, property in Evans & Lindsay, and 2, plea of justification, that he took them by virtue of an execution against Evans & Lindsay, etc.

A trial resulted in verdict for appellees, upon which the court gave judgment, after overruling a motion for a new trial. Appellant now brings the record before us on appeal and asks for a reversal, and assigns a great many errors. Appellees predicated their right to recover these goods upon the ground that Evans & Lindsay had procured them from appellees by fraud and misrepresentations, and that by reason of such fraud, Evans & Lindsay obtained no title. This contention was denied on the trial, by appellant.

Inasmuch as the judgment must be reversed for errors committed on the trial, we shall express no opinion upon the

evidence of the case or upon the ultimate rights of the parties. On the trial below, the court permitted Van Velzer to testify as to his conversation with Watt and Dean in Chicago, and to repeat to them what he said Evans & Lindsay told him concerning their financial standing when the order was taken. The court also permitted both Watt and Dean to testify what Van Velzer told them when he brought in the order, concerning what he had been told by Lindsay & Evans as to their financial standing, and the amount of their indebtedness. To all this testimony appellant, at the time, objected; but the objection was overruled. The admissibility of this evidence was error. The fraud complained of was the alleged false and fraudulent statements made by Evans & Lindsay to Van Velzer, at their store, concerning their financial standing, in order to induce Van Velzer to sell them the goods. Whatever fraud, if any there was, was committed then and there, and not at Chicago, or anywhere else. Conversations had with Van Velzer at Chicago, with his principal, in the absence of Evans & Lindsay, were no part of the *res gesta;* and anything there said could in no manner change or affect the alleged fraud used to procure the order at Buda. As to Watt and Dean, it was purely hearsay. Van Velzer could not strengthen his testimony, nor multiply witnesses by repeating it to others, in the absence of the parties to be affected by it. Such testimony was well calculated to induce the jury to suppose there were three witnesses to the alleged fraudulent purchase instead of but one. If, in fact, the alleged fraud was perpetrated upon Van Velzer, whereby he was induced to get the order filled by his recommendation, and that the goods were thus procured by Evans & Lindsay, it would be a matter of no importance what took place at the house in Chicago. Van Velzer stood as the representative of the house he represented when he took the order, and if the goods were so fraudulently obtained through Van Velzer, the vendor could recover them without showing that the principal had any information on the subject at the time of parting with the goods.

It is also objected that the court erred in permitting what

was called a " credit slip " to be read in evidence to the jury
against appellant's objection.    This credit slip seems to be a
little memorandum made out on a blank printed for that pur-
pose, which contains a statement of the financial condition of
Evans & Lindsay on the 21st day of February, 1888, made by
Mr. Miller, one of the firm, on the occasion of one of his
visits to Buda, but it is not signed by Evans & Lindsay, or
either of them, and it does not appear that they authorized it
to be made or that they knew it was made, nor that it was
made at their house.    Mr. Miller swears he made it that day,
but does not state where.    We think it was error to admit
this paper.    It was a mere private memorandum and at most
could only have been used by Mr. Miller to refresh his recol-
lection as to anything it contained which would be proper
testimony, if anything.    

Appellees were also permitted to prove, against the objections
of appellant, a transaction between Evans & Lindsay and the
bank, had at another and different time, which was also
claimed to be a false and fraudulent misrepresentation of their
standing, by which they procured the loan of money from the
bank, which they had never paid back.    This was clearly
erroneous, for it in no manner tended to prove the charge of
fraud in buying the goods, and had no connection with it
whatever; nor were appellees in any manner induced to part
with their goods by reason of the alleged fraud on the bank.
The bank transaction occurred a year previous to the one
involved in this suit.    It was a mere attempt to prove a bad
reputation for honest dealing against Lindsay &.Evans, and
to do it by proof of particular acts, which the law never allows.
Other acts of fraud are competent to be shown when it appears
they are a part of the general scheme under consideration, so
as to form a part of it, but not otherwise.    Hanchett v. River-
dale Co., 15 Ill. App. 59.

Mr. Miller was permitted also, against the objections of
appellant, to tell the jury what " ratings " Bradstreet and Dean
gave Evans & Lindsay in their commercial reports.    There was
no proof that Evans & Lindsay ever authorized or knew any-
thing about these "ratings."    This evidence was also improper

Henderson v. Miller.

and should not have been allowed to go to the jury without proof that Evans & Lindsay authorized the statements.

The 13th and 15th instructions, also, given for appellee, are manifestly wrong.   The 13th instruction informs the jury that one credible witness is worth more than many witnesses who, the jury may and do believe, have knowingly testified untruthfully upon any material point in issue and are not corroborated by other credible witnesses.

The 15th instruction informs the jury that if they believe from the evidence that the purchase of the goods was fraudulent or that judgments taken were not in good faith for money due, then the declarations of parties under oath on the witness-stand, who state such transactions were in good faith and without fraudulent intent, avail but little.

Neither of these instructions declare a correct proposition of law, and they both usurp the functions of the jury, whose duty alone it is to decide what weight shall be given to the testimony of witnesses.   Several other instructions given for appellee, if not positively erroneous, are open to serious criticism, in being argumentative and suggestive, and singling out particular facts and making these prominent before the jury. The statute makes it the duty of the court to instruct upon the law only.

This record seems to be unusually pregnant with errors, so far as the mere conduct of the trial was concerned.   The case seems to have been overloaded with instructions—twenty-eight in all—fifteen for appellee were all given, and thirteen for appellant, some of which were given and some refused. It would impose upon us too much labor and time and serve no useful end to go through the complaints made against these instructions in detail.   It is perfectly certain that all the law properly applicable to the case could have been correctly written in very short space, and that had such course been adopted, the errors which in part swell the grand aggregate in this record, would hardly have suggested themselves to counsel.

The judgment is reversed and remanded.

*Reversed and remanded.*