OLE E. HUSTAD, Appellant, *vs.* JOHN G. CERNY *et al.* Appellees.

*Opinion filed April 23, 1926—Rehearing denied June 3, 1926.*

1. DEEDS—*when finding as to proof of fraud will not be disturbed.* In a suit to set aside an exchange of properties upon the ground of fraud and misrepresentation, the finding of the chancellor, who saw and heard the witnesses, that the charges of fraud and misrepresentation were not sustained by the proof will not be disturbed on appeal unless it is manifestly against the weight of the evidence.

2. SAME—*when alleged misrepresentations will not afford basis of relief.* In a suit to set aside an exchange of properties on the ground of fraud and misrepresentation, representations as to the value of property, though exaggerated, will not afford a basis for relief where the party claiming to have been deceived had ample opportunity to learn the truth or falsity of the representations; and where a party does not rely upon statements concerning the value of property and its character but goes upon the land and examines it, he will be held to have relied upon his own judgment and will be denied relief unless the statements were concerning matters which he could not readily determine upon examination.

3. SAME—*when transaction will not be set aside for inadequate consideration.* The rule that a grossly inadequate consideration proves fraud is applied where there are acts of overreaching on the part of one and inability on the part of the other to take care of himself in the transaction; but an exchange of properties will not be set aside merely because one of the parties, who was capable of taking care of himself in the transaction, made a bad bargain and rceived property worth much less than that which he exchanged.

4. CONTRACTS—*one seeking to rescind a contract for fraud must place other party in statu quo.* One seeking to rescind a contract

on the ground of fraud must place the other party *in statu quo* or offer to do so in his bill, as the contract, if induced by fraud, is voidable at his election, and if he elects to have it declared void he must restore whatever he has received in the trade.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

JOHN J. SONSTEBY, for appellant.

HENRY P. SINDEN, PAUL R. SIMON, and LIGHTHALL, CARLSON & LEWIS, (C. OSCAR CARLSON, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a bill filed by appellant to set aside a deed given by him and his wife to appellees, on the ground of fraud and misrepresentation in the exchange of property. A hearing on bill and answer was had before the chancellor in open court, and a decree was entered finding that the charges of fraud were not sustained and dismissing the bill for want of equity. Appellant brings the cause here, contending that the court erred in finding that the charges contained in the bill were not sustained.

It appears from the evidence that appellant owned a building in the city of Chicago consisting of four apartments, which, according to the allegations of the bill, was of a value of approximately $10,500, subject to a mortgage of $7000. In 1917 he listed the property for sale with Joseph Logan, a real estate broker in Chicago. It appears that Logan had this property for sale for about a year and no purchaser was procured. In May, 1918, appellant told Logan that he would be willing to trade the property for a farm. It appears that John Logan, a brother of Joseph, was in the real estate business at New Lisbon,

Wisconsin, and evidently through the efforts of Joseph arrangements were made with John in May, 1918, by which appellant and his brother-in-law, Nels R. Wallin, went to Wisconsin and looked at various farms there, including the farm of appellees. Appellant testified that he asked appellees what they wanted for the farm, and they told him $9000. Appellees testified that they told him the price would be $7000. It appears that at this time appellant did not make a close examination of the farm but examined the buildings and asked some questions about the farm. The next month he again went to Wisconsin and went over this farm, also looking at some other farms in that neighborhood. While the parties were on the farm on this day Logan prepared a contract whereby an exchange of the farm for the city property was to be made. It appears that the Wisconsin farm had on it an incumbrance of $500. The contract recited appellant was to put in the Chicago property at $11,500, subject to an incumbrance of $7000, and the farm, together with farm machinery, two horses, six head of cattle and pigs and chickens, with growing crops on the farm, was put in at $7000, subject to the incumbrance of $500. By the terms of the contract each was to assume the mortgage on the property received by him, and appellant was to give a second mortgage on the farm for $2000, payable in three years. Appellant signed the contract while on the farm but appellees declined to sign it, for the reason, as given by them, that they had not seen the house and were not willing to enter into a contract until they saw what property was for sale. There is some evidence that Mrs. Cerny objected to the size of the mortgage. On July 4 following, appellees visited the property of appellant in Chicago. Later on, during that month, appellant was notified the contract was signed by appellees, though he did not see it at any time after he signed it. Between the visit of appellant to Wisconsin in June and the signing of the contract by appellees, appellant, at the sug-

gestion of John Logan, made another trip to Wisconsin and looked at another farm but did not visit the farm of appellees. After receiving notice of the signing of the contract appellant had the abstract to the Chicago property brought down to date, as was done with the abstract to appellees' farm, and on August 16 following, appellees made a deed to the farm and bill of sale of the personal property to appellant. On August 20 John Logan came to Chicago, and appellant and his wife prepared a deed to the Chicago property and turned the same over to Logan for delivery to appellees and received the deed and bill of sale of appellees to appellant. Appellant testifies that at the time he gave his deed to Logan it was understood and agreed between them that Logan was to hold the deed until after appellant had seen and was satisfied with the property before turning the deed over to appellees. Logan denies this, but says that he did not turn over the deed to appellees until appellant went on the farm and "checked it up." Appellant shipped his household goods to Wisconsin and moved to the farm. He arrived there on Saturday, August 24. There is sharp conflict in the evidence as to what took place there. Appellant testifies that when he went to the farm he found that the crops had been removed and that nothing had been planted, as was agreed; that there was no feed in the barn for the cattle and horses and no growing crops. Appellees and Logan testify that when appellant went to the farm he went over the place and said it was all right but that his wife was not satisfied because there was no bath-room on the place. Appellees testified that the hay had been cut and was in the barn and that other crops were growing on the place. Appellant contends that as soon as he saw the condition of the farm he demanded the return of his deed both from appellees and from Logan. This is denied by them. It appears that on Sunday he had become so dissatisfied with his trade that he demanded back his deed and asked appellees to take

charge of the livestock on the place, which they declined to do, saying that the property belonged to him and that they were moving off, which they did on that day. On that day appellant sold all of the personal property to a near by neighbor for the sum of $90 in cash and a check for $210 and left the place. Later the mortgage for $500 was foreclosed and the place was sold for $1000. Appellant offered testimony to show that the farm, aside from the livestock and personal property, was worth from $1800 to $2000.

Appellant contends that the fraud and misrepresentation complained of consist of the statement of John Logan and appellees that the place was worth $9000; that Logan agreed to keep the deed until appellant was satisfied before turning it over; that appellees told him that they had been on the place for three years and had raised and sold potatoes to the amount of $900 or $1000 the year before, whereas they had bought the place the previous August and had been on it but one year. Appellant's evidence on these matters is sharply contradicted by Logan and appellees. It is evident that appellant got little of value for his property. It is likewise evident from the testimony that Logan, who claimed to be acting as agent for both parties by the terms of the contract, urged appellant to buy this farm, but it is also true that appellant did not rely upon statements concerning the farm but visited it twice and on one occasion went over it carefully.. He testified that the crops were removed from the farm when he arrived and that he demanded his deed because of this failure of performance on the part of appellees, but the record does not show this by a preponderance of the evidence. Appellees testify that there was feed in the barn and the crops were on the farm as they agreed they should be. When asked on cross-examination what he did with the crops when he left, appellant testified that he did not do anything with them. It is evident that he became disgusted with his trade and left.

The chancellor in this case saw and heard the witnesses, and under the well established rule we are not justified in overturning his findings in the case unless they are manifestly against the weight of the evidence. Though representations made in the sale of property be not true, if the purchaser has an opportunity to view the property it is his duty to make use of that opportunity. The law charges him with knowledge which he might have obtained by making use of the means afforded him, and where he does not rely upon statements concerning the value of the property and its character but goes upon the land and examines it, relying upon no one's representation as to what it is, it can not be said that misrepresentations, though made, afford a basis for relief in equity for the reason that they were not relied upon, and unless they be concerning matters which the prospective purchaser cannot readily determine upon examination, he will be held to have exercised his own judgment rather than to have relied on the statements of the seller. Representations as to value of property, though exaggerated, do not ordinarily afford a basis for relief where the party claiming to have been deceived has had ample opportunity to learn as to the truth or falsity of the representations. *Johnson* v. *Miller,* 299 Ill. 276; *Krankowski* v. *Knapp,* 268 id. 183; *Bear* v. *Fletcher,* 252 id. 206; *Zempel* v. *Hughes,* 235 id. 424; *Tuck* v. *Downing,* 76 id. 71; *Southern Development Co.* v. *Silva,* 125 U. S. 247.

Nor does it appear from a preponderance of the evidence that appellant effectively rescinded the contract. His own testimony is, that after he had demanded return of his deed he gave the key to the Chicago property to appellees upon their demand. He also testifies that he sold all the personal property on the farm. His reason for so doing is that there was no feed for the livestock. In this he is disputed by appellees. The absence of food for the livestock, if such was the fact, was not, however, sufficient reason for a sale of every other item of personal property

on the farm. Whether he would be required to keep the livestock ready to be tendered back if no feed had been left for them in order to be able to rescind the contract need not be decided for two reasons: First, it does not appear from the preponderance of the evidence that there was no feed on the farm for the .livestock; and second, the necessity for sale of the livestock would not afford a reason for selling the balance of the property. It is fundamental in the rescission of contracts that one seeking to rescind must place the other party *in statu quo* or offer to do so in the bill. (*Babcock* v. *Farwell*, 245 Ill. 14; *Edmunds* v. *Myers*, 16 id. 207.) A contract induced by fraud is not void in law but voidable only at the election of the defrauded party. If he elects to void the contract he must restore the property he has received in the trade. This is based on the principle that he who seeks equity must do equity. (*Rigdon* v. *Walcott*, 141 Ill. 649; *Doane* v. *Lockwood*, 115 id. 490; *Strong* v. *Lord*, 107 id. 25; *Neblett* v. *Macfarland*, 92 U. S. 101.) Appellant unnecessarily disposed of personal property and was not in a position to comply with this rule.

It is evident that the consideration received by appellant was grossly inadequate, but the rule permitting the court to find that inadequate consideration amounts to proof of fraud has no application here, for that rule is based on acts of overreaching on the part of one and inability on the part of the other to take care of himself in the transaction. There is no evidence here that appellant is not capable of taking care of himself in a trade. He made a bad bargain, but that fact, alone, does not warrant the interference of equity. We are of the opinion that we would not be justified in saying that the findings of the chancellor are manifestly against the weight of the evidence.

The decree will therefore be affirmed.

*Decree affirmed.*