(No. 25928.—

THE CHICAGO TITLE AND TRUST COMPANY, Appellant, *vs.*
THE ROGERS PARK APARTMENTS BUILDING CORPORA-
TION *et al.* Appellees.

*Opinion filed February 18, 1941.*

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, A. ED-MUND PETERSON, and CONCANNON, DILLON, BOSTELMAN & SNOOK, (JOSEPH B. FLEMING, MATTHIAS CONCANNON, VERNON M. WELSH, and WAYNE F. SWONK, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, (JACOB SHAM-BERG, and HARRY A. BIOSSAT, of counsel,) *amicus curiae.*

Mr. JUSTICE SHAW delivered the opinion of the court:

This is an appeal from an order entered in the superior court of Cook county under the title of a ten-year old foreclosure suit wherein the Chicago Title and Trust Company (hereinafter called the trustee) had been complainant, and Rogers Park Apartments Building Corporation, and others, had been defendants. The order appealed from was one entered by the court of its own motion, requiring the company, acting as trustee, to turn over certain moneys in its hands to the clerk of the court. So far as we can learn from the briefs and such research as we have been able to make, the order appealed from is without precedent, and a statement of the antecedent facts is necessary.

The foreclosure suit out of which the present appeal indirectly arises, was commenced by the trustee in 1930, pursuant to the terms and titles conveyed by a certain trust

deed which was given to the trustee by the building corporation in January of 1928. This trust deed secured an issue of 1350 bonds in the aggregate principal sum of $800,000, and conveyed certain real estate in the city of Chicago to the trustee. The bonds contained a very full description of the trust deed with its numerous provisions, and by reference incorporated the trust deed in its entirety as a part of each bond. The trust deed is of considerable length and usual in form. In general, it gave to the trustee the fullest conceivable powers to act for the bondholders in dealing with the trust estate, made the trustee the trustee of an express trust for the bondholders, and rigorously limited the power of any bondholder to act in his own behalf except upon refusal of the trustee to act for him. Section 5 of article X, in part, provides as follows: "In any case in which under the provisions of this article X hereinabove the trustee has the right to institute foreclosure proceedings, upon demand of the trustee the mortgagor agrees to pay the trustee, for the benefit of the holders of the bonds hereby secured and then outstanding, the whole amount then due and payable on all such bonds for interest or principal, or both, as the case may be; * * * in case the mortgagor shall fail to pay the same forthwith upon such demand, the trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment for the whole amount so due and unpaid. * * * Any moneys collected by the trustee upon any such judgment shall be applied by it in accordance with the provisions of section 3 of this article in so far as the same may be applicable." Section 6 of article XI provides that in all action suits or proceedings or dealings or transactions in any way affecting the trust deed or the premises, the trustee shall be deemed the representative of all of the bondholders. In the same article the trustee is authorized to alter or amend the trust deed or to join in granting highways, alleys, or parkways, or in subdividing the premises

if it shall deem such action for the best interests of the bondholders. The same article gives the trustee other broad powers as to fixing boundaries by agreement, the erection of party or division walls, etc., and provides that whatever action may be taken shall be binding upon every bondholder, and that the bondholders need not be notified or consulted of such acts.

Article XIII provides for a succession in trust. The first provision is that if the Chicago Title and Trust Company should resign, refuse or become disqualified to act, that the Foreman Trust and Savings Bank should be the first successor in trust with exactly the same rights, powers and duties, and that in case of any further vacancy a successor should be appointed by a majority in amount of the bonds outstanding or, under certain named circumstances, and on application and due notice, a court of chancery might appoint a new trustee. It is provided, however, that if a court should appoint such a trustee, it should "always be some responsible resident trust company having a paid-up capital and surplus aggregating at least $500,000." Other extensive provisions of the trust deed might possibly be pertinent, but they may all be summarized by the general statement which we made above that the trustee is given the fullest possible power to represent the bondholders as trustee of an express and active trust.

Acting as trustee under the provisions of this trust deed (and under a collateral chattel mortgage supplementing the same) on February 5, 1930, the trustee filed its bill of foreclosure. On December 28, 1931, the decree of foreclosure was entered requiring the payment of $925,318.39, and directing sale of the premises in the usual form. The decree also required payment to the trustee, as such, a sum of $4333.33 which had been deposited under a sinking fund provision. This decree of foreclosure reserved jurisdiction in the court for the purpose of applying the rents,

issues and profits during the period of redemption on account of any deficiency found due; to advise and instruct the complainant in respect to its powers and duties as trustee; to supervise and direct complainant in the further administration of the trust; to provide, by orders not inconsistent with said decree, for the prompt distribution by complainant as trustee of moneys paid to it under the decree; to require complainant trustee to make reports of such payments and to determine controversies between persons claiming title to any bond or coupon secured by the trust deed.

The premises were sold pursuant to this decree on a bid of $431,000, which was paid by the presentation and cancelling of 1295 out of the original 1350 bonds and the remainder in cash. Out of the cash portion the sum of $22,290.54 was paid to the trustee for the use and benefit of the legal owners and holders of the bonds and interest coupons which had not been presented to the master to apply on the bid. A deficiency decree was entered in favor of the trustee individually as trustee in the sum of $521,869.77. The approval of the master's report of sale and distribution and the deficiency decree were entered on July 9, 1932, and the case remained dormant in the superior court almost exactly eight years, or until April 22, 1940. During this period of eight years the trustee made twenty-seven items of disbursements to various bondholders who appeared and claimed their money. These disbursements were in the total sum of $38,623.87. Twelve of them were made during the year 1932, six during the year 1933, two during the year 1935, one during the year 1937, two during the year 1938, and four during the year 1939, the last one having been made on November 14, 1939. At the time the order appealed from was entered there remained in the hands of the trustee, taking into account the sinking fund which had been received from the Foreman Trust and Savings Bank, the sum received from the master of the

proceeds of sale, and the sum received from the receiver to apply on the deficiency decree, the total balance of $4,905.63, and this is the sum which the superior court ordered paid to its clerk.

After this long dormant period of eight years and on April 22, 1940, the chancellor in the superior court, entirely of his own motion, without complaint from any interested person and without petition by or on behalf of any bondholder, without process or notice, entered an order directing that the "Chicago Title and Trust Company, Trustee, in the trust deed foreclosed upon herein, plaintiff herein, be and it is hereby ordered and directed to make a full and complete report and account to the Court, under oath, of all moneys received and disbursed by it, as trustee, under the terms of the trust deed foreclosed upon in the above entitled cause, said report and account to contain: (a) A report of all moneys or property received by said Chicago Title and Trust Company, trustee, as aforesaid; (b) a report and account of all disbursements and payments made by said Chicago Title and Trust Company, as such trustee, from such moneys and property, if any, received by said Chicago Title and Trust Company, trustee, as aforesaid, same to be supported by receipts, vouchers, etc., for any and all such disbursements and payments so made by said Chicago Title and Trust Company, trustee; and (c) a report of any sums of money or property, if any, now remaining in the hands of said Chicago Title and Trust Company, as trustee, undistributed from such moneys or property that it may have received as said trustee, as aforesaid, and that said report and account shall be filed herein in this cause within ten days from the date of the entry of this order; and that a hearing on said report and account so to be filed by said Chicago Title and Trust Company, as trustee herein, be and the same is hereby set before the undersigned Judge

of this Court for the 3rd day of May, A. D. 1940, at 10 o'clock a.m."

On receipt of notice of the entry of this order the trustee filed its motion to vacate the same for want of jurisdiction to enter it, and this motion was overruled on the day it was filed. On the same day the report was filed as above indicated. On June 11, 1940, the court modified its previous order by striking out the words "as trustee in the trust deed foreclosed upon herein" in two places where it occurred in the previous order, and by substituting, in lieu thereof, the words: "plaintiff under the decree and orders of the court in the above entitled cause." Also by striking out of the subdivisions a, b, and c in the order quoted above the word "trustee" wherever it appears and substituting in lieu thereof the word "plaintiff." On the day that the court thus amended its previous order, and still acting of its own motion, without complaint by anyone, it entered the order which is directly appealed from requiring the trustee to pay the balance in its hands over to the clerk of the superior court to be paid to the unknown owners of certain bonds secured by the original trust deed.

This case is unique in that there are no parties and there is no issue. The only controversy in the trial court consisted of an extended argument between the judge and counsel for the trustee. The State's attorney was permitted (or requested) to appear as a friend of the court but took little or no part in the matter, contributing only about seventy-five words to the entire discussion, and it is difficult to perceive any reason for his appearance, because neither the court, the county of Cook, the People of the State of Illinois, nor any member of the public at large had any interest at all in the matter under discussion. The discussion between court and counsel did not disclose any issue and is of no value except as it presents the argu-

ments made by the judge on one side of the case and the arguments made in reply by counsel for the trustee.

From these statements it appears that court and counsel between them estimated that there might be as much as $4,000,000 dormant in the hands of various trustees in Chicago, unclaimed, and belonging to diverse and sundry unknown beneficiaries; that the judge had "been thinking about it for a couple of years"; that so far as he could see this money might remain forever in the hands of the various trustees and that, in his own words "if the court is proceeding properly that money will eventually be paid in to the county and become the assets of the people at large without prejudicing the rights of the bondholders." As near as we can tell from the record this desire on the part of the chancellor to have this unclaimed money "become the assets of the people at large" is the reason for this proceeding and the end actually sought to be attained. By what legal means the owners of these moneys are to be deprived of their property or how it is to "become the assets of the people at large," and how this is to be accomplished "without prejudicing the rights of the bondholders" is not made apparent. It seems fairly obvious that if the money becomes the assets of the people the bondholders must necessarily be prejudiced, while if it is to remain the property of the bondholders it is entirely unclear how their interests are better served by depositing the money with the clerk than by leaving it in the hands of a financially responsible trustee under State supervision and protected by securities deposited under the Trust Companies act.

The discussion between judge and counsel is further enlightening only in that it discloses what the judge had in mind as to a definition of his own powers in the premises. In his argument with counsel he conceded, as it is conceded in the briefs, that if the trustee was actually a trustee of an active and express trust, he would have no

power to order a transfer of the fund. He took the position, however, on the hearing and after his first order had been entered, that the trustee was not a trustee at all, but merely a depositary. This is apparent from the discussion and also, as a matter of record, from the amendment of the original order which is noted above. The original order to report designated the trustee as "Chicago Title and Trust Company, trustee"; the amendment designated the respondent as "Chicago Title and Trust Company, plaintiff herein," and this amendment was made throughout the order, in each case eliminating the word "trustee" and substituting therefor the words "plaintiff herein." It was insisted by the court that the moneys were paid to the trustee merely for the convenience of the court in securing distribution to the various beneficiaries, and that the court reserved and retained jurisdiction to change its own instrumentality at will, and that that was all that was being done by the present order. It was said by the court that the trust deed was totally merged in the decree of foreclosure, and required no further consideration.

On the other hand, it was urged, and it is urged here, that the trust deed was still a binding contract as between the mortgagor, the trustee and the bondholders; that the trustee had legal title to the debt and the proceeds of the foreclosure, and that although the trust deed might be merged in the decree in so far as it had been exhausted as a security instrument between the mortgagor and mortgagee, it still remained a valid and binding contract as between the trustee and the beneficiaries of the trust,— i.e., the bondholders; that in so far as these rights, duties and liabilities might be concerned they were real and substantive, were agreed upon by the trust instrument and provisions of the bonds, were fixed and determined by the decree entered more than eight years previously, that after the term of court at which the decree had been entered, the court was without jurisdiction to vary those substan-

tive rights by taking the money of the bondholders away from a trustee of their own selection and ordering it paid to the clerk. The court conceded this position of the trustee to be sound if the trust company was, in fact, a trustee, but insisted, as above indicated, that it was a mere depositary. The decision of the case is thus narrowed to a determination of this one point, and in deciding this one point it is not necessary to decide whether or not the court might have entered the order in question of its own motion without complaint and without notice even if the trust company had been a mere depositary. This question is definitely not passed on.

In deciding this one point it is necessary to refer back to the trust deed and the decree of foreclosure. In the foregoing statement of facts we quoted section 5 of article X of the trust deed which provided that if the mortgagor should fail to pay the sums due under the trust deed "the trustee, in its own name and as trustee of an express trust shall be entitled to recover judgment for the whole amount so due and unpaid." This provision of the trust deed was observed and carried into final effect by the decree of foreclosure which ordered, adjudged and decreed that the various sums hereinabove mentioned should be paid to "Chicago Title and Trust Company, a corporation, as trustee." Even if it be true, as stated by the chancellor, that the trust deed, as a security instrument, was merged in the decree of foreclosure, its covenants still remain in force in so far as they represent a contract between the trustee and the beneficiaries. (*Hill* v. *Hinman Avenue Building Corp.* 365 Ill. 129.) It must be noted that no question of merger existed at the time the decree was entered and that the provisions of the decree merely followed and implemented the covenants of that agreement. The court, at that time, could not have entered any other order without violating the plain intent and meaning of the trust instrument and thereby committing error.

The trust company was not a mere depositary, but the trustee of an express, active trust, and this is shown not only by the terms of the trust deed which expressly so designated it, but by the decree itself which followed the covenants of that instrument and ordered the money paid to the trustee for distribution to the bondholders. The legal title to it passed to the trustee. The obligation was not to perform the mere mechanical function of distributing certain specific items of currency or coin, but to become responsible to the extent of its corporate assets and its guaranty fund on deposit with the State, for the payments of certain amounts to whomsoever might be the lawful owner of the respective bonds in question, and to make determination of this ownership at its own peril and on its own financial responsibility. Until such determination could be made and such payments accomplished to its satisfaction it remained, and will continue to remain, an insurer of the funds. This was a function for which the clerk of the superior court, in his official capacity is neither qualified nor officially bonded, and a function which the parties, by their trust deed, surrounded with many safeguards. The bondholders were protected by a succession of trustees first to the Foreman Trust and Savings Bank, or to a trustee of their own selection, or if a trustee were named by a court, to a resident corporation with a capital and surplus of not less than $500,000. It is beyond question that the bondholders wanted a financially responsible trustee and there is nothing to indicate that any of them would want their money turned over to the clerk of the superior court if they had any notice of such intention and an opportunity to be heard. The bondholders are the only persons interested in this proceeding.

It is further to be noted that in the final decree of July 9, 1932, the sums of money which are now in question were not only ordered paid to the trustee "as trustee," but also that a judgment was given "forthwith as at com-

mon law against said Rogers Park Apartments Building Corporation, a corporation, for the said sum of Five Hundred Twenty-one Thousand Eight Hundred Sixty-nine Dollars and Seventy-seven cents ($521,869.77); that execution issue forthwith for said sum of $521,869.77, with interest, in favor of the Chicago Title and Trust Company, a corporation, as Trustee." This judgment became a part of the trust estate for the same beneficiaries as the monies and could have been entered only on the theory that the trustee became the owner of the debt for the benefit of the bondholders. (Ill. Rev. Stat. 1939, chap. 95, sec. 17.) No one but the trustee could have collected or satisfied this judgment and there is nothing in the record to indicate whether or not it is collectible, but it is clear that the legal title to it is in the trustee.

There is nothing in the briefs or arguments to indicate that any one doubts or questions the general rule that a trustee of an express and active trust can only be removed upon according due process of law to all interested persons, (1 Perry on Trusts and Trustees, sec. 282; *Butler* v. *Butler,* 164 Ill. 171;) and that even upon due process the power of removal should be exercised sparingly and upon a showing of clear necessity. (*Wylie* v. *Bushnell,* 277 Ill. 484.) In this case there is no petition, complaint, bill or motion seeking removal of the trustee; there is no charge of insecurity, misconduct or wrongful dealing of any kind, and there is no hint or claim of any process or notice whatsoever to the interested parties. For want of due process, so far as the bondholders are concerned, it is clear that the order could not bind them and that, as between them and the trustee, the liability of the trustee would continue and could not be transferred to the clerk of the court. The fund is held by a trustee of the bondholder's own selection and whether they call for it or not is their own concern or the concern of their heirs or rep-

resentatives, if they are not living. So far as the general public is concerned, it is no different, and no more subject to control by a court, than an unclaimed bank deposit or other credit.

It is our conclusion that the order appealed from is void and it is, therefore, reversed.

*Order reversed.*