KENNETH B. BROWN, Plaintiff-Appellant, *v.* BRUCE B. BROWN, SR., *et al.*, Defendants-Appellees.

Second District   No. 76-369

Opinion filed July 24, 1978.

Hercules Paul Zagoras, of Waukegan, for appellant.

Robert L. Snook, of Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, for appellees.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The plaintiff-appellant, Kenneth B. Brown, hereafter the plaintiff, as an individual and in his capacity as co-trustee of the testamentary trust under the last will of William G. Brown, hereafter the trust, sued his brother, Bruce B. Brown, Sr., the defendant-appellee, hereafter the defendant, as an individual and in his capacity as co-trustee of the trust. The plaintiff prayed that the defendant be compelled to pay off two notes held by the trust and that the conveyance of the home owned by their mother, Mrs. Helen Pearl Brown, to the defendant be set aside or in the alternative that the conveyance be held to have created a constructive trust for the benefit of the plaintiff and the defendant. The plaintiff also sought to remove the

defendant as co-trustee of the trust. Finally, the plaintiff prayed that the defendant be ordered to pay the plaintiff's attorney's fees. After a bench trial in the circuit court of Lake County, the Honorable John L. Hughes held that the defendant did owe the trust on the two notes but denied the plaintiff any relief in regard to the conveyance of the family home, finding that the transaction had been free from fraud. The trial court also refused to remove the defendant as a co-trustee. Lastly, the trial court declined to order the defendant to pay the plaintiff's attorney's fees. The plaintiff has appealed, contending the record clearly demonstrates the conveyance of the family home to the defendant was fraudulent and ought to be set aside or held to have created a constructive trust for the benefit of the plaintiff and the defendant. The plaintiff further alleges that the defendant's improper behavior as a co-trustee required his removal from that position. Finally, the plaintiff contends the trial court abused its discretion by not ordering the defendant to pay the plaintiff's attorney's fees.

The record before us manifestly demonstrates that there was ample evidence presented to raise the question of an abuse of the alleged fiduciary relationship between the defendant and Mrs. Brown. However, the trial court failed to address the issue, thus necessitating a remandment for further consideration of that issue together with the question of the defendant's performance of his duties as trustee, which is inextricably interwoven with the question of the possible fiduciary relationship.

The first act in this family dispute occurred in April 1948, when William G. Brown lent his son, Bruce, the defendant, $15,000 to start up a business. The loans were evidenced by two notes made by the defendant. The first was for $2,500 and the second was in the amount of $12,500. Both notes bore interest at 3½ percent and were due the following April. However, the notes were still unpaid when William G. Brown died in 1952. The defendant, as executor of his father's estate, filed an inventory and final account which included the notes as part of the estate of William G. Brown.

The last will and testament of William G. Brown provided for the creation of a trust, the principal beneficiary of which was William G. Brown's widow, Helen Pearl Brown. The trust was to be used to provide Mrs. Brown with a minimum of $500 a month in support. The trustees were empowered to increase the monthly payment to Mrs. Brown as the need arose and were empowered to invade the corpus of the trust to provide for her adequate support. Upon the death of Mrs. Brown, the trust was to be used to aid the education of the grandchildren of William G. Brown until such grandchildren reached the age of 25. After that educational purpose has been accomplished, the corpus of the trust is to

be divided equally between the plaintiff and the defendant, who are the only children of William G. and Helen Pearl Brown.

The initial trustees of the trust were the defendant and Arnold Stephan, the defendant's brother-in-law. The defendant still is a trustee, but Mr. Stephan resigned in 1966 and was replaced by the plaintiff. At that time, the plaintiff was a career naval officer and was rarely in Deerfield, Illinois, the family's home. Hence, the plaintiff was required to perform such trustee duties that he did perform via the mails or the telephone. In contrast, the defendant lived directly across the street from their mother in Deerfield. There is no question that the defendant was the dominant trustee and generally handled Mrs. Brown's financial affairs.

In late 1968 and early 1969 the trust was having difficulty providing sufficient income to meet the living expenses of the then 90-year-old Mrs. Brown. A dispute erupted between the plaintiff and the defendant as to what would be the best course of action. The defendant advocated selling some of the trust's stock holdings in order to produce the needed cash. The plaintiff, then stationed in New Mexico, did not concur in the idea. The plaintiff suggested that the trust could borrow against the stock as opposed to selling it. Furthermore, the plaintiff asserted that the trust would have more than enough cash if the defendant would pay off the money he owed on the notes. The defendant refused to pay off the notes, and an impasse developed.

In March of 1969, the plaintiff wrote his mother a letter, offering to resign as trustee upon the happening of one of two conditions: First, the plaintiff would resign if the defendant would also resign and the management of the trust were taken over by the First National Bank of Chicago; secondly, the plaintiff would resign if Arnold or Frank E. Stephan agreed to serve as co-trustee with the defendant. Neither condition was met, so the plaintiff did not resign as co-trustee. The plaintiff took no further action at that time.

The defendant had Robert V. Connors, an attorney, prepare a letter for Mrs. Brown's signature, dated March 21, 1969. This letter is at the heart of the matters before this court. The letter stated that Mrs. Brown requested attorney Conners to prepare the letter. However, at trial, Mr. Conners testified that he had never met nor talked with Mrs. Brown concerning the letter or on any other matter. The letter went on to state that Mrs. Brown was aware of the impasse that had developed between the co-trustees of the trust which was created to provide for her full support. She was also aware of the trust's inability to generate sufficient cash to provide for her support. Aware of these problems and having fear for her future ability to make ends meet, Mrs. Brown agreed to exchange her house—her principal asset—for the defendant's promise that he would provide for

her the rest of her life. More specifically, the defendant promised to pay all taxes and insurance on Mrs. Brown's home and to fully maintain it. Furthermore, the defendant agreed to pay for all the nursing his mother required and generally to provide for her full support as long as she lived. Before Mrs. Brown signed this letter it was read to her at least once a day over a course of a week by her live-in nurse, Margaret L. Vieth. Mrs. Brown lived for another five years before dying in 1974. Over the course of those five years, the defendant contributed over $21,000 to his mother's support. The plaintiff is quick to point out that if the notes with accrued interest, worth in excess of $25,000 on the date Mrs. Brown conveyed her home to the defendant, had been paid off, the trust would have had more than sufficient cash to provide for Mrs. Brown's support.

By conveying her house to the defendant, Mrs. Brown in effect disinherited the plaintiff. In 1958 she had written a will which provided that her entire estate, with the exception of two specific bequests of jewelry, should be divided equally between her two sons—the plaintiff and the defendant. Since Mrs. Brown's principal asset was her house, for all practical purposes, the conveyance to the defendant exhausted her estate and thus had the effect of disinheriting the plaintiff. The plaintiff claims he did not learn of the conveyance until shortly after his mother's death in 1974, at which time he commenced this action.

Carmen Brown, the defendant's second wife, was joined as a defendant because she currently owns the former home of the late Mrs. Brown in joint tenancy with her husband.

The trial court found the defendant owed the trust $32,979.71 in principal and accrued interest on the two notes. The defendant has not appealed from that judgment. The trial court also found that the conveyance by Mrs. Brown of her house to the defendant was not induced by fraud and was made for valid consideration. Furthermore, the trial court held that the defendant had properly performed his fiduciary duties to the trust and therefore declined to remove him as a trustee. Finally, the trial court denied the plaintiff's request for court costs and attorney's fees. The plaintiff has appealed from those findings.

■■ A preliminary matter needs to be disposed of before we reach the merits of this appeal. The defendant has filed a motion seeking to strike portions of the plaintiff's brief for alleged violations of Supreme Court Rule 341 (Ill. Rev. Stat. 1975, ch. 110A, par. 341). While the plaintiff's brief is not in strict compliance with the rule, the defendant's motion must nevertheless be denied. Supreme Court Rule 341 is not a limitation upon the jurisdiction of a court of review, but rather is an admonishment to the parties. (*Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 346 N.E.2d 482.) A court of review may consider improperly raised issues where such consideration is necessary for a just

result. (Supreme Court Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366); *In re Application of County Treasurer* (1975), 25 Ill. App. 3d 717, 323 N.E.2d 803.) In the case at hand, a just result requires us to consider all points that have been raised.

■■■ The principal point in contention on this appeal is the plaintiff's assertion that the trial court erred in not setting aside the conveyance of Mrs. Brown's home to the defendant; more specifically, plaintiff argues that the conveyance of the house was the result of an abuse, on the part of the defendant, of a fiduciary relationship. The trial court's order specifically found that Mrs. Brown was competent to conduct business transactions[1] and that the complained of transaction was not tainted by actual fraud. The order, however, nowhere addresses the issue of constructive fraud arising from an alleged abuse of a fiduciary relationship. Hence, this cause must be remanded to the trial court for a determination of this issue.

■■ In seeking to resolve this issue, the trial court shall first ascertain if a fiduciary relationship, broad enough to encompass the complained-of transaction, existed between the defendant and his mother at the time of the same. There is no question but that such a relationship existed between the defendant and his mother with respect to all transactions concerning the assets of the trust of which he was a trustee and his mother a beneficiary. However, the rule that prohibits a trustee from gaining any advantage in his dealings with a trust beneficiary does not apply to dealings between a trustee and a beneficiary with reference to property of the latter that has no connection with the trust. See, *e.g.*, Bogert on Trusts §96, at 351-52 (5th ed. 1973); in this same context, see *Stone v. Stone*, 407 Ill. 66, 77 (1950); *Stoke v. Wheeler*, 391 Ill. 429, 434 (1945).

■■ Hence, the trial court must determine if, as a matter of fact, a fiduciary or confidential relationship existed between the defendant and his mother, which would encompass the conveyance of the house. "Where a fiduciary or confidential relationship does not exist as a matter of law, *e.g.*, principal and agent, attorney and client, it may nonetheless arise where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another who, as a result, gains an influence and superiority over him." *Wold v. Wold*, 43 Ill. App. 3d 773, 777 (1976).

---

[1] Plaintiff contends that, "[t]he consideration for the conveyance was illusory because [Mrs.] Brown had a right to insist ° ° ° that Bruce B. Brown pay his debt to the Trust or that he invade the Trust if necessary to support her." The plaintiff thus argues that the contract to convey was not an enforceable contract because unsupported by valid consideration.

The defendant, before entering into the instant contract, had no legal duty, apart from the trust, to support his mother (see Ill. Rev. Stat. 1977, ch. 23, par. 2—11); he assumed such a duty for the first time in consideration of his mother's promise to convey the house; this assumption of a new duty constituted valid consideration. *Reeh v. Fasold*, 40 Ill. App. 3d 240, 242 (1976).

■■ A fiduciary relationship does not exist, as a matter of law, between a parent and a child; rather it must be proved by competent evidence. (*Stone v. Stone*, 407 Ill. 66, 78 (1950); *Bodin v. Mattingly*, 8 Ill. 2d 487, 489-90 (1956).) The trial court, in seeking to determine if such a relationship existed between the defendant and his mother, shall take into account the following factors: (1) the close degree of kinship between the allegedly servient party (Mrs. Brown) and the allegedly dominant party (the defendant); (2) the disparity in age between the two parties; (3) the state of Mrs. Brown's health; (4) her mental condition; (5) her education and business experience; (6) the extent to which she actually entrusted the handling of her business and financial affairs to the defendant; (7) the extent to which she reposed "faith and confidence" in the defendant; and (8) any other relevant circumstance. (*Kester v. Crilly*, 405 Ill. 425, 432 (1950); *Guerrieri v. Guerrieri*, 13 Ill. App. 3d 1043, 1046 (1973).) The existence of a fiduciary relationship must be proved by "clear and convincing evidence." *Kester v. Crilly*, 405 Ill. 425, 432 (1950).

If the trial court finds that no fiduciary relationship existed between Mrs. Brown and the defendant such as would encompass the conveyance of the house, then it will enter an order denying plaintiff's prayer for rescission of the conveyance.

If, however, the trial court finds that a fiduciary relationship existed between Mrs. Brown and the defendant that was sufficiently broad to encompass the conveyance of the house, a presumption will arise that the conveyance was in violation of the defendant's fiduciary duties to his mother and, hence, constructively fraudulent. (*Boryca v. Parry*, 24 Ill. 2d 320, 327 (1962).) A fiduciary can dissipate this presumption by showing, with clear and convincing evidence, that the complained of transaction was fair in every respect. "The important factors in determining whether a particular transaction is fair include a showing by the fiduciary (1) that he has made a free and frank disclosure of all the relevant information which he had, (2) that the consideration was adequate, and (3) that the principal had competent and independent advice before completing the transaction." (*Dombrow v. Dombrow*, 401 Ill. 324, 332-33 (1948); see also *Works v. McNeil*, 1 Ill. 2d 47, 52 (1953); *Rendl v. Anderson*, 103 Ill. App. 2d 255, 262 (1968); *Ciolek v. Jaskiewicz*, 38 Ill. App. 3d 822, 830 (1976).) In the instant case, the trial court shall also explore the extent to which the complained of transaction was made necessary by misconduct, on the part of the defendant, in the management of the trust.

■■ If the trial court finds that (1) a fiduciary relationship existed between Mrs. Brown and the defendant sufficient in scope to encompass the complained of transaction; and (2) that the defendant has failed to demonstrate, by clear and convincing evidence, that the transaction was fair in all respects, according to the criteria set forth above, it will next

have to consider the question of whether the remedy of equitable rescission is available. "A party who seeks to rescind a contract * * * must return, or offer to return, the entire consideration which he received under the contract so that the other party may be placed in the same position in which he was before the contract was entered into." (*Corbett v. Devon Bank*, 12 Ill. App. 3d 559, 573-74 (1973).) This rule applies to those situations wherein a party seeks to set aside a contract on the ground of fraud as well as on any other ground. (*Hustad v. Cerny*, 321 Ill. 354, 360 (1926).) Thus, if the court finds a fiduciary relationship between the defendant and his mother and an abuse of that relationship, it can order the defendant to convey the house to Mrs. Brown's estate, on condition that the estate return the amount of money that the defendant expended, for the benefit of Mrs. Brown, pursuant to the contract of conveyance.

"A court of equity may assess interest when warranted by equitable considerations." (*Galler v. Galler*, 61 Ill. 2d 464, 474 (1975).) Hence, the circuit court, on remand, would have the inherent power to grant interest to the defendant on the amount of money expended by him pursuant to the contract of conveyance if warranted by the circumstances. If, however, the court in the instant case were to find an abuse of a fiduciary relationship (which finding, of course, would be a predicate to rescission of the conveyance), this equitable consideration would militate against granting interest to the defendant.

■■ It should be noted that plaintiff introduced into evidence a document which appears to be the will of Mrs. Brown; this purported will provides that Mrs. Brown's entire estate, with the exception of two bequests of jewelry, shall be divided equally between her two sons—the plaintiff and defendant. If this will were offered for probate and found to be valid (see Ill. Rev. Stat. 1977, ch. 110½, par. 6—7), plaintiff and defendant would be the sole takers, in equal shares, of Mrs. Brown's real estate; in that event, the trial court could order the defendant to convey a one-half interest in the house to the plaintiff, as a tenant in common, on condition that the plaintiff pay the defendant one-half of the amount of money the defendant spent for the benefit of Mrs. Brown pursuant to the contract of conveyance (including any interest which the trial court in the exercise of a sound discretion might see fit to grant.) If it were determined that Mrs. Brown, in fact, died intestate, the foregoing remedy might still be available since it appears that the plaintiff and defendant would take the house, in equal shares and as tenants in common, under the Illinois law of intestate succession (Ill. Rev. Stat. 1977, ch. 110½, par. 2—1).[2]

---

[2] Defendant relies on *Berry v. Heiser*, 271 Ill. 264 (1915), for the contention that plaintiff does not have standing to seek to set aside a conveyance made by his deceased mother. The *Berry* case, however, must be read with the gloss that *Warner v. Flack*, 278 Ill. 303, 308 (1917), places on it; when so read, it becomes clear that the plaintiff, here, may seek a

Plaintiff also argues that the trial court erred in refusing to remove the defendant as co-trustee. "The inherent power of a court of equity over trusts includes the power to remove a trustee for breach of trust, misconduct or disregard of fiduciary duties" (*Altschuler v. Chicago City Bank & Trust Co.* (1942), 380 Ill. 137, 142, 43 N.E.2d 673, 676); nevertheless, this power "should be exercised sparingly and [only] upon a showing of clear necessity." (*Chicago Title & Trust Co. v. Rogers Park Apartments Building Corporation* (1941), 375 Ill. 599, 610, 32 N.E.2d 137, 141-42.) "[T]he motive which actuates * * * removal is not punishment of an unfaithful or incompetent trustee, but rather protection of the beneficiaries from loss in the future administration of the trust." (Bogert on Trusts §160, at 574 (5th ed. 1973).) A prayer for a trustee's removal is addressed to the sound discretion of the court and will not be disturbed on review except for an abuse of that discretion. (*Chicago Title & Trust Co. v. Chief Wash Co.* (1938), 368 Ill. 146, 13 N.E.2d 153.) Under the facts of this case, we are unable to say that the trial court abused its discretion in refusing to remove the defendant from his position of trust. However, because the question is inextricably interwoven with the question of whether or not a fiduciary relationship outside of the trust existed between the defendant and Mrs. Brown, on remand the trial court should make a new determination of the question consistent with the views herein expressed.

The plaintiff further contends that the trial court erred in excluding three exhibits, consisting of two complaints and a judgment order in unrelated actions. In the two complaints, it was alleged that the defendant was an officer or director in two corporations; that he was in control of the records of these corporations; and that he paid himself money from corporate funds without giving the corporation . any note or acknowledgment of the debt thus created. The third exhibit was a copy of a consolidated judgment order where the defendant was found to be indebted to the corporations in question in the amount of $50,000. Plaintiff argues that these exhibits should have been admitted to show either "modus operandi" or intent to defraud. Plaintiff's argument apparently is that if the trier of fact determined that the defendant's "careless" bookkeeping with respect to the instant trust was really an intentional attempt by him to defraud the trust, the plaintiff's prayer for removal of the defendant would be bolstered; the plaintiff would be assisted in making such a showing of fraud, so he maintains, if he could show that the defendant has committed acts of fraud against other parties in the recent past.

---

rescission of the complained of conveyance since the defendant has not demonstrated that Mrs. Brown "ratified" the conveyance after the alleged undue influence had ceased to operate.

■■ Other acts of fraud are admissible, in a civil action, to prove the fraud charged, where there *is* evidence that *the* two acts are part of a single scheme or plan of fraud or were committed in pursuance of a common purpose. (*Hanchett v. Riverdale Distillery Co.*, 15 Ill. App. 57, 61 (1885); *Henderson v. Miller*, 36 Ill. App. 232, 236 (1890); see also McCormick on Evidence §197, at 468-69 (2d ed. 1972); Fed. R. of Evid. 404(b).) Here there was no evidence that the judgment in the unrelated cases was founded upon fraud; nor is there any evidence of a common plan or scheme; hence, the "modus operandi" exception to the rule which bars the use of evidence of other misconduct to prove the misconduct charged is inapplicable.

Also, apart from the "modus operandi" exception, evidence of other acts of fraud is admissible, in a civil case, if probative of knowledge or intent. (*Joseph Taylor Coal Co. v. Dawes*, 122 Ill. App. 389, 397 (1905), *aff'd*, 220 Ill. 145 (1906); see also McCormick on Evidence §197, at 468-69 (2d ed. 1972); Fed. R. Evid. 404(b)). Once again, the prior judgment has very slight probative value since it is not at all clear that it is founded upon fraud; nor is it clear how, even if predicated on fraud, it would be probative of knowledge or intent in the instant case. Hence, we conclude that the trial court did not err in refusing to receive the three exhibits into evidence.

■■ In the matter of the plaintiff's request for attorney's fees, it is sufficient for us to note that the awarding of attorney's fees is a matter within the sound discretion of the trial court. (*Northern Trust Co. v. Winston*, 32 Ill. App. 3d 199 (1975).) There was no evidence that the trial court abused its discretion in refusing to award the plaintiff attorney's fees, and, accordingly, that portion of the trial court's order is affirmed.

For the above reasons, that portion of the circuit court's order denying plaintiff's request for attorney's fees is affirmed. However, those portions of the circuit court's order holding that the defendant had properly performed his duties as trustee and that portion of the order upholding the conveyance of the residence of Mrs. Brown to the defendant are reversed, and this cause is remanded to the circuit court of Lake County with directions to re-examine the defendant's conduct as trustee and to determine if a fiduciary relationship sufficiently broad to encompass the conveyance of the house existed betwen Mrs. Brown and the defendant at the time of this conveyance, and, if such a fiduciary relationship is found to have existed, to determine if the conveyance was "fair in every respect."

Affirmed in part; reversed in part; remanded with directions.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.