THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BERNARD THIEM, Defendant-Appellant.

First District (1st Division)   No. 78-1795

Opinion filed March 31, 1980.

Marc O. Beem, of Mandel Legal Aid Clinic, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Michael M. Lorge, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The defendant, Bernard Thiem, was charged by indictment with the murder of Arthur Daniels. (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2).) Although initially found unfit to stand trial,[1] he was subsequently determined fit for trial, and was found not guilty by reason of insanity after a bench trial. (Ill. Rev. Stat. 1977, ch. 38, par. 115—3.) Pursuant to section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(a)), the trial court on March 22, 1978, entered an order finding the defendant in need of mental treatment and consequently committing him to the Department of Mental Health and Developmental Disabilities (hereinafter Department). The trial court also found the defendant incompetent. Ill. Rev. Stat. 1977, ch. 91½, par. 9—11.

On appeal, the defendant contends that: (1) the trial court erred in committing him to the Department under the law in existence at the time of his trial rather than under the law in effect at the time of the offense; (2) the judgment of commitment was invalid for lack of sufficient clarity; and (3) the evidence did not support the trial court's finding of legal incompetence.

We affirm in part and reverse and remand in part.

---

[1] The order entered by the trial court after that determination was appealed to this court and the cause was remanded. (*People v. Theim* (1977), 52 Ill. App. 3d 160, 367 N.E.2d 367.) Although the earlier opinion shows a different spelling of the defendant's name, it does pertain to the present defendant. That portion of the proceedings is not pertinent to this appeal.

At the trial the parties stipulated that, if called, certain witnesses would testify that on April 15, 1976, while at his place of employment, the defendant walked up to the victim with a pipe in his hand and,without provocation, struck him several times on his head, causing his death. The defense called Dr. Frank Lorimer, a staff psychiatrist for the Psychiatric Institute of the circuit court of Cook County, who testified that he had conducted several examinations of the defendant, including an examination shortly after the murder and an examination approximately one month before the defendant's trial, which consisted of verbal communications and observation. His diagnosis of the defendant was that of a "paranoid state in a person of long term psycho-sexual conflict (homosexuality) and anti-social record." Dr. Lorimer explained that "the paranoid state" is a psychosis or mental illness and that it was his opinion that the defendant was insane on the date of the crime in that he lacked a substantial capacity to appreciate the criminality of his acts as a result of his mental illness. Dr. Lorimer further testified that the defendant's psychosis, which he concluded was long term in nature, rendered him dangerous to others and in need of mental treatment, although in his opinion the prognosis for correcting this condition was dismal.

The trial court found the defendant not guilty of murder by reason of insanity. The court concluded that the defendant had not recovered from his insanity, was in need of mental treatment and was legally incompetent. Therefore, it remanded him to the custody of the Department of Mental Health "for an indefinite time not to exceed the maximum amount of time that the defendant would have been required to serve * * * Defendant is not to be discharged or released for any period of time from the custody of the Department of Mental Health, however, without written notice of the Superintendent of the Department of Mental Health not less than thirty (30) days prior to such release or discharge to both the court and the State's Attorney. If either the court or State's Attorney requests a hearing, it must be held within thirty (30) days of the motion for a hearing."

The quoted portions of the trial court's order resemble the statutory requisites of section 5—2—4(b) and (d)(2) of the Unified Code of Corrections as amended and effective January 1, 1978 (hereinafter amended act) (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—2—4(b), (d)(2)) upon an acquittal by reason of insanity and the court's determination that the defendant was in need of mental treatment as defined by the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 1—1 *et seq.*). Prior thereto section 5—2—4(b) provided that after an acquittal by reason of insanity the jury, or if a jury was waived, then the court would ascertain if defendant's insanity persisted. If defendant was found to be insane at that time, he would be committed to the Department for a period not to

exceed 12 months, and further hospitalization would be under the provisions of the Mental Health Code of 1967. The prior statute did not require that the Department notify the trial court and State's Attorney prior to releasing a defendant previously committed, and it provided that the court would determine if a defendant was competent. Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4.

■■ Initially, we should note that the People have filed a motion seeking to strike portions of the defendant's reply brief for violating Supreme Court Rule 341 which provides that an appellant shall raise issues, which he wishes to be considered on appeal, in his original brief and that any issues raised for the first time in the appellant's reply brief shall be deemed waived on appeal. (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).) This Rule, however, does not deny a court of review of the jurisdiction to entertain issues first raised in a reply brief if justice and fairness require their consideration. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831; *Brown v. Brown* (1978), 62 Ill. App. 3d 328, 379 N.E.2d 634; *Huber Pontiac, Inc. v. Wells* (1978), 59 Ill. App. 3d 14, 375 N.E.2d 460.) In the present case, we find that a just result dictates our consideration of all the issues raised by the appellant. We should note that our decision to entertain the defendant's additional arguments has not acted to prejudice the People's opportunity to present responsive argument in this appeal (*Hux v. Raben*) in that the People have filed a supplemental brief in which they have responded to the defendant's additional arguments. Accordingly, we deny the People's motion to strike portions of the defendant's reply brief.

The defendant contends that the trial court was governed by the law in effect at the time of the commission of the offense and that, in fact, the trial court stated that it was proceedings under the version of section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4) in effect at the time of the commission of the offense. Therefore, the defendant maintains that the trial court's entry of the March 22, 1978, order, which placed restrictions on the defendant's release from the Department, not statutorily authorized when the offense was committed, exceeded the trial court's statutory authority. Additionally, the defendant argues that the order violated the prohibiton against ex post facto laws and violated the defendant's equal protection rights.

■■ The retroactive application of criminal statutes is specifically prohibited by the ex post facto provisions of the United States and the Illinois constitution (U.S. Const., art. I, §9; Ill. Const. 1970, art. 1, §16; *e.g.*, *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517; *People v. Wyckoff* (1969), 106 Ill. App. 2d 360, 245 N.E.2d 316) and the rules of statutory construction (Ill. Rev. Stat. 1977, ch. 131, par. 4; 34 Ill. L. & Prac. *Statutes*

§193 (1958)). A statute is characterized as retroactive if it "takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." 34 Ill. L. & Prac. *Statutes* §193, at 154 (1958).

The Illinois Supreme Court in *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187, recently addressed the propriety of applying the amended act to instances where the offense, which was the basis for the defendant's acquittal by reason of insanity, was committed prior to the effective date of the amended act. Valdez was charged with the April 4, 1977, murders of Lecia Agsaoay and Dr. Jesus Lim but acquitted by reason of insanity on May 3, 1978. As in the case at bar, at the time of the murders, section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4) was in effect, while at the time of the trial the amended act was in effect. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4.) The trial court found the defendant in need of mental treatment and remanded him to the Department. Thereafter, in response to a notice of the Department that it was considering granting Valdez "off ground privileges" the States Attorney, pursuant to the amended act, requested a hearing. The trial court conducted an evidentiary hearing and entered an order denying the requested privileges and further ordered certain changes in the overall treatment program of Valdez. On direct appeal to the supreme court (Ill. Rev. Stat. 1977, ch. 110A, par. 302), the defendant argued that the retroactive application of the amended act violated the established rules of statutory construction and equal protection.

■■ In reaching the first issue, the court rejected the defendant's characterization of the statute as retroactive. The court explained that:

> "The occurrence which invoked the provisions of the statute was not the commission of the offenses with which defendant was originally charged; the statute was invoked by his acquittal by reason of insanity. Furthermore, the amendment did not affect any right which defendant had acquired as of the effective date of the change [Citation.] * * *." (*People v. Valdez* (1980), 79 Ill. 2d 74, 81.)

Under the supreme court's holding in *Valdez*, which controls this case, we must reject the defendant's argument that the trial court exceeded its authority in applying the amended act to the defendant. Moreover, we must also reject the defendant's constitutional argument that the retroactive application of the amended act violated the prohibition against ex post facto laws.

The defendant's second argument is that the application of the amended act to him acted as a violation of his equal protection rights

because individuals who were committed to the Department after an acquittal by reason of insanity were treated differently than those who were civilly committed. Specifically, the defendant points out that the amended act authorizes a hearing before release from the Department for an individual who has been committed pursuant to an insanity acquittal, while an individual who is civilly committed may be released by the Department without an analogous hearing. The defendant also contends that the statute creates an unreasonable classification because it provides for the above-mentioned judicial review prior to release only until he would have been eligible for parole had he been sentenced to the maximum sentence available under the offense with which he was charged. The court in *Valdez* faced with identical objections to the application of the amended statute held that the provision did not violate the equal protection clause. Accordingly, we also reject this argument.

■■ The defendant next contends that even if the amended act generally could be applied in this type of case, the absence in the present case of a separate hearing on need for mental treatment, as required by statute (Ill. Rev. Stat. 1977, ch. 38, pars. 115—3, 1005—2—4(a)), precluded application of the amended act. The defendant argues that in light of the existence of more stringent requirements for a defendant's release under the amended act, a separate hearing is critical to avoid any confusion by the trier of fact as to the distinct difference between the issue of a defendant's insanity and his present need for mental treatment.

At the defendant's trial the defense attorney inquired of the trial court as to what procedure would be followed with regard to the testimony of the psychiatrist who would offer testimony both as to the insanity of the defendant and as to his present need for mental treatment. The trial court proposed that the psychiatrist should testify as to both issues at the bench trial rather than hold a separate hearing on the latter issue at the close of the trial. The defense counsel made no objection to the trial court's proposal, nor did he present a petition indicating a desire by the defense to bring in any additional witnesses to support the defendant's need for medical treatment. The trial court, as trier of fact, heard the evidence of Dr. Lorimer regarding the defendant's need for mental treatment at the trial and, therefore, was in the unique position to evalute the defendant's present treatment needs. Consequently, we find that the trial court's failure to hold a separate hearing after the trial, to elicit the testimony of the same witness who testified at the trial, was not an abuse of discretion. Moreover, from our review of the record, we find that the trial court had before it sufficient evidence from which to conclude that the defendant was in need of mental treatment. (Compare *People v. Butler* (1979), 69 Ill. App. 3d 556, 387 N.E.2d 908, with *People v. Turner* (1978), 62 Ill. App. 3d 782, 379 N.E.2d 377.) We therefore, reject

the defendant's argument that comments made by the trial court during the trial indicated the trial court's confusion concerning the insanity plea and the defendant's present need for mental treatment.

■■ ■ While the procedural features of the amended act were properly applied, we note that the commitment order failed to specify the maximum period of commitment to the Department as required by that section. Section 5—2—4(b) provides in pertinent part:

> "* * * that the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time; provided, however, that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4.)

Generally a judgment should be so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a non-judicial or ministerial officer to supplement the written words to ascertain its meaning. (*People v. Walton* (1969), 118 Ill. App. 2d 324, 254 N.E.2d 190.) Accordingly, here, the trial court should determine and fix a definite maximum period of commitment in accordance with the provisions of the amended act. We should note, that in determining the maximum sentence which the defendant could have been required to serve, the trial court must give the defendant the right to elect whether he would have wished to be sentenced in accord with the law in existence at the time of the murder or that in existence at the time of the trial. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4; *People v. Hollins* (1972), 51 Ill. 2d 68, 208 N.E.2d 710; *People v. Gunner* (1979), 73 Ill. App. 3d 533, 392 N.E.2d 165.) Once this determination has been made and the trial court has fixed the maximum period of commitment in accordance with the amended act, the commitment order should be amended to reflect this clarification.

Finally, defendant contends that the evidence presented at trial does not support the trial court's finding that he was "not legally competent." Section 9—11 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 9—11) provides that commitment after a finding that a defendant is in need of mental treatment is not an adjudication of, and creates no presumption of, legal incompetency and does not deprive the patient of his civil rights. Sanity and competency hearings are separate and distinct matters, since all the court can do in a competency hearing is make a determination as to whether the defendant is capable of handling his own affairs. (*People ex rel. Drury v. Catholic Home Bureau* (1966), 34

Ill. 2d 84, 213 N.E.2d 507; *People v. Adams* (1976), 35 Ill. App. 3d 810, 343 N.E.2d 659.) The evidence at trial was related to the sole question of defendant's sanity at the time of the commission of the offense and at the time of trial. That evidence clearly demonstrated that defendant was in need of mental treatment; however, the record does not provide a basis for a determination as to his legal competency. Accordingly, we remand this matter to the trial court for a hearing and determination of the defendant's competency.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed as to the application of amended 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4); however, it is reversed and remanded to the trial court in order to have the trial court set forth in an amended commitment order a definite maximum commitment period under the provisions of amended 5—2—4(b) and to determine whether the defendant was competent under section 9—11 of the Mental Health Code of 1967. Ill. Rev. Stat. 1977, ch. 91½, par. 9—11.

Affirmed in part, reversed and remanded in part.

GOLDBERG, P. J., and O'CONNOR, J., concur.