(No. 76945.—

MICHAEL BARGER *et al.*, Appellees, v. HOWARD PETERS III, Director of Corrections, Appellant.

*Opinion filed December 22, 1994.*

HEIPLE, J., joined by NICKELS, J., dissenting.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of Chicago, of counsel), for appellant.

Ruthanne DeWolfe, W. David Koeninger and James O. Latturner, of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

The question in this case is whether Public Act 88—311, which excludes inmates from the opportunity to increase good-conduct credit, violates the *ex post facto* clauses of the Federal and Illinois Constitutions (U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16). We hold that it does.

## BACKGROUND

As of September 10, 1990, section 3—6—3 of the Unified Code of Corrections applied a multiplier to increase the "day for a day" credit certain prisoners could earn toward early release. (Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3 (amended by Pub. Act 86—1373, eff. September 10, 1990).) Inmates engaged in Department of Corrections educational programs who met specified goals were eligible to receive credit increased by a factor of 1.25. (Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3.) The multiplier was not available for those convicted of first or second degree murder or those convicted of a Class X felony. (Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3.) Nor was it available for inmates who were convicted of a felony while engaged in the programs. Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3.

Public Act 88—311, effective August 11, 1993, amended section 3—6—3. (Pub. Act 88—311, eff. August 11, 1993 (amending Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3).) Among the changes, the act precluded application of the multiplier to categories of inmates previously eligible for it under section 3—6—3. (Pub. Act 88—311, eff. August 11, 1993 (amending Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3).) Pertinent here, the act rendered ineligible for the multiplier inmates

convicted of criminal sexual assault, felony criminal sexual abuse, and aggravated criminal sexual abuse, and aggravated battery with a firearm, as well as related inchoate offenses. Pub. Act 88—311, eff. August 11, 1993 (amending Ill. Rev. Stat. 1991, ch. 38, par. 1003—6—3).

Pursuant to a certified class action, the circuit court of Cook County ruled that Public Act 88—311 violates *ex post facto* prohibitions. The suit had been brought by Michael Barger and Richard Maez, convicted, respectively, of criminal sexual assault and attempted armed robbery. Barger and Maez represented inmates whose crimes and convictions fell between September 10, 1990, the effective date of Public Act 86—1373, and August 11, 1993, the effective date of Public Act 88—311, making them ineligible for increased credit. Finding Public Act 88—311 unconstitutional, the circuit court permanently enjoined the Department of Corrections from applying it to the plaintiff class.

The matter lies here on direct appeal (134 Ill. 2d R. 302).

## DISCUSSION

The Federal Constitution prohibits States from enacting any *ex post facto* law. (U.S. Const., art. I, § 10.) Although that limitation renders it unnecessary, the same protection historically has been included in this State's constitutions. (Ill. Const. 1970, art. I, § 16; Ill. Const. 1870, art. II, § 14; Ill. Const. 1848, art. XIII, § 17; Ill. Const. 1818, art. VIII, § 16; F. Grad, *The State Bill of Rights*, in Con-Con, Issues for the Illinois Constitutional Convention 44 (V. Ranney ed. 1970); G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 75 (1969).) It has been suggested that there is, nevertheless, some utility in the provisions' coexistence, the thought being that the prohibitions, together, lend greater assurance of the constitu-

tional protection than the Federal clause alone. G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 75 (1969).

But the drafters of our modern constitution intended the Illinois *ex post facto* clause to do no more than conform to the Federal Constitution's general prohibition on the States. (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1476; 6 Committee Proposals, Sixth Illinois Constitutional Convention 55.) Thus, in construing this State's constitutional provision, we are without a basis to depart from the Supreme Court's construction of the Federal *ex post facto* clause. (See *People v. Tisler* (1984), 103 Ill. 2d 226, 243-45.) And, in fact, this court has long interpreted our own constitutional provision in step with Supreme Court pronouncements. See, *e.g., People v. Ramey* (1992), 152 Ill. 2d 41, 63-64.

In *Weaver v. Graham* (1981), 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960, the Supreme Court used an expansive interpretation of the *ex post facto* clause to strike down a Florida statute which reduced "gain-time" credit earned for avoiding disciplinary infractions and performing assigned tasks. Such legislation, the Court explained, could be constitutionally applied retrospectively only if it did not work to a prisoner's "detriment." (*Weaver*, 450 U.S. at 33, 67 L. Ed. 2d at 25, 101 S. Ct. at 966.) Because the statute "change[d] 'the quantum of punishment' " for prisoners who committed crimes before its enactment, it was disadvantageous with respect to them. (*Weaver*, 450 U.S. at 33, 67 L. Ed. 2d at 25, 101 S. Ct. at 966, quoting *Dobbert v. Florida* (1977), 432 U.S. 282, 293-94, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298.) The disadvantage: constricting the opportunity to earn early release effectively "lengthen[ed]" the period of actual incarceration, making more onerous the punishment for already committed crimes. *Weaver*,

450 U.S. at 33-34, 67 L. Ed. 2d at 26, 101 S. Ct. at 966-67.

This court, in *Tiller v. Klincar* (1990), 138 Ill. 2d 1, used the same interpretation of the *ex post facto* prohibition to invalidate legislation curtailing the frequency of parole hearings which had been previously mandated every year. The "possibility of parole," the court noted, "is an element of the punishment annexed to any crime." (*Tiller*, 138 Ill. 2d at 11.) Thus, in lengthening the period between parole hearings, the legislation eliminated the opportunity for earlier release to the disadvantage of those already incarcerated. *Tiller*, 138 Ill. 2d at 11-12.

The notion that the *ex post facto* prohibition nullifies any law which " 'alters the situation of a party to his disadvantage' " (emphasis omitted) was established in *Kring v. Missouri* (1883), 107 U.S. 221, 228-29, 27 L. Ed. 506, 509, 2 S. Ct. 443, 449, quoting *United States v. Hall* (D. Pa. 1809), 26 F. Cas. 84, 86 (No. 15,285). But, in *Collins v. Youngblood* (1990), 497 U.S. 37, 48-49, 111 L. Ed. 2d 30, 42-43, 110 S. Ct. 2715, 2722, the Supreme Court overruled *Kring*, holding that the quoted language indicated an unjustified expansion of the *ex post facto* prohibition beyond the categories of laws the Framers intended to come within the clause's ambit.

Those categories were established in *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 1 L. Ed. 648, shortly after ratification of the Constitution. They included, as is relevant here, "[e]very law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed." (Emphasis in original.) (*Calder*, 3 U.S. (3 Dall.) at 390, 1 L. Ed. at 650.) Summarized differently, such a law would be one "which makes more burdensome the punishment for a crime[ ] after its commission." (*Beazell v. Ohio* (1925), 269 U.S 167, 169-70, 70 L. Ed. 216, 217, 46 S. Ct. 68, 68.) If the law does

not so affect the punishment associated with a crime, it is of no moment that the law may work to a prisoner's disadvantage. See *Collins*, 497 U.S. at 48, 111 L. Ed. 2d at 42-43, 110 S. Ct. at 2722.

The question here then becomes whether elimination of an opportunity to increase good-conduct credit is a change in the punishment associated with a crime or results in the infliction of greater punishment. In the wake of *Collins*, that question is not to be answered against what disadvantage may be visited upon the plaintiff class through elimination of the opportunity for early release. But because *Collins* otherwise left unaffected the Court's holding in *Weaver* and, by implication, this court's decision in *Tiller*, the question ultimately turns on the meaning the Court ascribes to the term "punishment."

The Supreme Court does not view punishment for *ex post facto* clause purposes to mean simply the period of incarceration prescribed by a judge for a person convicted of a crime—that is, the sentence. Instead, the Court construes punishment to mean the actual time that such a person spends in prison. The Florida statute invalidated in *Weaver* did not affect, retrospectively, the sentence imposed on any inmate. The " 'quantum of punishment' " affected was nothing but the time for which an inmate was actually incarcerated under the sentence imposed. Generally, then, any legislation curtailing the possibility of reducing actual prison time makes more onerous the consequence associated with a crime. It is entirely inconsequential that capitalizing on the opportunity may depend on an inmate's success in staying out of trouble or attaining other goals.

Public Act 88—311 does not change the prescribed period of incarceration imposed for the crimes committed by members of the plaintiff class. If understanding the consequence associated with a crime was limited by

the more common notion of equating punishment with sentence, the act would comport with the constitutional clauses. But when the consequence associated with a crime is viewed in the manner indicated by the Supreme Court in *Weaver*, the act does, indeed, make more burdensome the punishment associated with certain crimes already committed.

We must, as in *Tiller*, apply that more generous understanding of punishment here. Public Act 88—311 curtails the opportunity for an earlier release as permitted under section 3—6—3 in its form as existed between September 10, 1990, and August 11, 1993. Public Act 88—311 curtails the opportunity for an earlier release as permitted under section 3—6—3 in its form as existed between September 10, 1990, and August 11, 1993, and so makes more burdensome the punishment associated with the crimes of the plaintiff class. The class consists of inmates who were eligible as of September 10, 1990, to enhance their good-conduct credit by a factor of 1.25 under section 3—6—3 but who were, as of August 11, 1993, deprived of that opportunity by Public Act 88—311. As to that class, Public Act 88—311 violates the *ex post facto* prohibitions of the Federal and Illinois Constitutions.

We therefore affirm the permanent injunction entered by the circuit court. The injunction precludes application of Public Act 88—311 "to persons who committed the offenses for which they were convicted on and after September 10, 1990[,] to and including August 10, 1993, were committed to the Illinois Department of Corrections, and were or would have been eligible on August 10, 1993[,] for the 1.25 enhanced educational good conduct credit" under section 3—6—3 as unamended by Public Act 88—311.

*Affirmed.*

JUSTICE HEIPLE, dissenting:

When the instant criminal plaintiffs were sentenced for their crimes, section 3—6—3 of the Unified Code of Corrections provided that certain prisoners were eligible to earn credits toward early release through their participation in prison educational programs. (730 ILCS 5/3—6—3(a)(4) (West 1992).) Then, in 1993, Public Act 88—311 became effective, which modified the Unified Code of Corrections so that certain categories of prisoners were no longer eligible to earn any additional education credits. The plaintiffs' resulting class action suit alleged, and the majority has found, that Public Act 88—311 constitutes an impermissible *ex post facto* law in that it makes more burdensome the punishment of their crimes. I dissent.

Prior to the Supreme Court's decision in *Collins v. Youngblood* (1990), 497 U.S. 37, 50, 111 L. Ed. 2d 30, 44, 110 S. Ct. 2715, 2723, *ex post facto* jurisprudence in the United States had devolved into finding a violation wherever a law retroactively worked a disadvantage on a prisoner. Essentially, the majority employs this outdated, broader approach in finding that Public Act 88—311 is an *ex post facto* law unconstitutionally disadvantaging the instant plaintiffs.

In *Collins,* however, the Supreme Court returned *ex post facto* jurisprudence to its rightful roots by reaffirming the definition delivered by Justice Chase in *Calder v. Bull.* (*Collins,* 497 U.S. at 50, 111 L. Ed. 2d at 44, 110 S. Ct. at 2723, citing *Calder v. Bull* (1798), 3 U.S. (Dall.) 386, 1 L. Ed. 648.) *Calder* held, in pertinent part, that an *ex post facto* violation occurs only where a retroactive law "changes the punishment, and inflicts a greater punishment, *than the law annexed to the crime, when committed.*" (Emphasis added.) *Calder,* 3 U.S. at 390, 1 L. Ed. at 650.

The majority errs in its application of the *Calder*

definition by focusing solely on the meaning of the term "punishment." It finds that Public Act 88—311 inflicts a greater punishment in that it curtails the possibility of reducing the plaintiffs' actual prison time. What the majority ignores, however, is the threshold requirement that the law at issue constitutes a change in the punishment "annexed to the crime, when committed." *Calder*, 3 U.S. at 390, 1 L. Ed. at 650.

The dangers inherent in ignoring this requirement become clear upon considering the absurd conclusions to which it logically leads. Consider section 3—6—3(a)(3) of the Unified Code of Corrections (730 ILCS 5/3—6—3(a)(3) (West 1992)), which gives prison officials the discretion to grant an additional 180 days of good-conduct credit for meritorious conduct. Accepting the majority's rationale, if, at the time of the crime, good-conduct credit could be earned by a prisoner for cleaning prison latrines, then the subsequent assignment of such services to an employed janitor might arguably be deemed a violation of the prisoner's rights. More directly to the point, however, the majority's approach improvidently raises both equal protection and *ex post facto* questions as to the thousands of prisoners who are currently on the waiting lists for educational programs.

At the time Public Act 88—311 was enacted, there were in excess of 4,000 prisoners on waiting lists for educational programs. (See 88th Ill. Gen. Assem., Senate Proceedings, April 16, 1993, at 1 (comments of Senator Hawkinson).) As of November 1, 1994, some 4,992 inmates remained on educational program waiting lists. Doubtless, many of these prisoners will have served their prison terms without ever being offered participation in educational programs.

It should be recognized that the amendments contained in Public Act 88—311 can only constitute an *ex post facto* law if the pre-amendment provisions consti-

tuted a law annexed to the plaintiffs' crimes when committed. In determining whether a law is annexed to a crime when committed, it is appropriate to note that, by including the *ex post facto* prohibition in the Constitution, the Framers sought to "assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." (*Weaver v. Graham* (1981), 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 23, 101 S. Ct. 960, 964.) In other words, the *ex post facto* clause ensures that a criminal knows in advance the consequences of his crime.

These consequences, of course, include the sentence that a criminal can expect under the law. In Illinois, for example, criminals understand that, except for certain proscribed offenders, the sentence imposed by a trial judge will automatically be reduced by their good behavior while in prison. (730 ILCS 5/3—6—3(a)(2) (West 1992).) Such automatic credit for good behavior is a law annexed to the crime when committed because, *inter alia*, this guaranteed "eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." *Weaver*, 450 U.S. at 32, 67 L. Ed. 2d at 25, 101 S. Ct. at 966.

This is not the case, however, regarding enhanced credit for participation in educational programs. Unlike automatic credit for good behavior, the possibility of earning educational credit in Illinois has always been uncertain. It depends upon the vagaries of State funding, the prison that an inmate is randomly assigned to, and even upon the innate abilities of a given prisoner.

The arbitrary and uncertain availability of the educational programs precludes any suggestion that criminals anticipate that their sentences will be reduced if they choose to participate in educational programs.

For, choose though they might, their desires are likely to be frustrated by the unavailability of such programs. Consequently, unlike automatic good-conduct credit, the law making these educational programs available does not constitute a law annexed to the crime when committed.

Insofar as the availability of educational participation credits could not have been depended upon when the plaintiffs committed their crimes, Public Act 88—311, which only modifies the availability of the educational classes, is not an *ex post facto* law. Any disadvantages caused by Public Act 88—311 are thus constitutionally irrelevant.

For the foregoing reasons, I respectfully dissent from the majority opinion.

JUSTICE NICKELS joins in this dissent.