743 N.E.2d 181 (2000)
318 Ill.App.3d 709
252 Ill.Dec. 607
In re F.G., a Minor, (The People of the State of Illinois, Plaintiff-Appellee,
v.
F.G., a Minor, Defendant-Appellant).
No. 1-97-0682.
Appellate Court of Illinois, First District, Fourth Division.
December 28, 2000.
*182 Michael Pelletier, Deputy Defender, Office of the State Appellate Defender, Chicago (Barbara Kamm, of counsel), for appellant.
Richard Devine, State's Attorney, Chicago (Renee Goldfarb, Veronica Calderon, and Kathryn Schierl, of counsel), for Appellee.
Presiding Justice HARTMAN delivered the opinion of the court:
Following a bench trial, defendant was found delinquent on the basis of his having been found accountable for and guilty of first-degree murder and aggravated battery with a firearm. The circuit court committed defendant to the custody of the Department of Corrections, Juvenile Division, until his 21st birthday, pursuant to Public Act 88-680, commonly known as the Safe Neighborhoods Act (705 ILCS 405/5-33(1.5) (West 1996)), which mandated a five year sentence. Subsequent to defendant's sentencing, in People v. Cervantes, 189 Ill.2d 80, 243 Ill.Dec. 233, 723 N.E.2d 265 (1999) (Cervantes), the Illinois Supreme Court declared the Safe Neighborhoods Act unconstitutional and, therefore, void ab initio. Defendant appeals his disposition, alleging that because the Safe Neighborhoods Act was held void ab initio, he should receive a new sentencing hearing under the statute in effect prior to the Safe Neighborhoods Act. For reasons which follow, we agree.
Defendant raises as issues on appeal whether (1) he should be provided a resentencing hearing under the statute existing prior to Public Act 88-680; and (2) the State's argument for application of the mandatory commitment period under Public Act 90-590, the law in effect during the pendency of defendant's appeal, would violate ex post facto principles.
In the evening of December 26, 1995, defendant rode as a passenger in a vehicle driven by his friend, Jesus Lopez. At 105th Street in Chicago, Lopez and defendant encountered another vehicle filled with rival gang members who flashed gang signs and shot at them. Defendant and Lopez escaped unharmed and returned to defendant's house, where defendant, Lopez and Israel Trevino, another friend of defendant, discussed the shooting. Trevino revealed he had a revolver. They decided to drive back to the area of the shooting and seek out rival gang members to shoot at in retaliation. Lopez drove the vehicle with defendant and Trevino as passengers. At the corner of 107th and Mackinaw Streets, defendant, Lopez and Trevino approached a large group of people standing outside, believing them to be members of the rival gang. In actuality, the crowd of people had gathered to memorialize a family member who had died in an earlier shooting at that location. As they drove by, Trevino fired three shots into the crowd. Sergio Marin died after receiving a bullet wound to the back. Two of Marin's aunts, Yolanda and Theresa Carrillo, were injured in the shooting. After the shooting, Defendant, Lopez and Trevino fled to a liquor store, bought beer and returned to defendant's home.
By petition for a finding of delinquency, defendant was charged with being accountable for first-degree murder and aggravated battery with a firearm. The State unsuccessfully moved to have defendant tried as an adult. Defendant then moved to suppress statements he made to police after his arrest. During the hearing on the motion to suppress, a psychologist testified that defendant had an IQ of 65 and therefore could not understand the Miranda warnings. The circuit court denied the motion after concluding that the psychologist's findings were not credible.
A bench trial was conducted on November 18, 1996 and the circuit court adjudicated defendant delinquent on all charges. On January 8, 1997, the court denied defendant's *183 motion for a new trial and committed him to custody of the Department of Corrections, Juvenile Division, until his 21st birthday. Defendant filed a timely notice of appeal.

I
The issues in the instant case involve questions of law entirely; therefore, the standard of review is de novo. People v. Saunders, 288 Ill.App.3d 523, 525, 223 Ill.Dec. 840, 680 N.E.2d 790 (1997).
As earlier noted, the circuit court committed defendant to custody of the Department of Corrections, Juvenile Division, pursuant to Public Act 88-680 (Pub. Act 88-680, eff. January 1, 1995), the Safe Neighborhoods Act (705 ILCS 405/5-33(1.5) (West 1996)),[1] which imposed a mandatory minimum commitment of five years after a finding of delinquency on the basis of first degree murder. Prior to January 1, 1995, a minor found delinquent for first degree murder was subject to commitment with no mandatory minimum sentence. See 705 ILCS 405/5-33 (West 1992).[2] In Cervantes, the Illinois Supreme Court held that the Safe Neighborhoods Act violated the single subject clause of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8. Shortly thereafter, in In re G.O., 191 Ill.2d 37, 43, 245 Ill.Dec. 269, 727 N.E.2d 1003 (2000) (In re G.O.), the Illinois Supreme Court ruled that because the Safe Neighborhoods Act was declared unconstitutional in its entirety, the Act was void ab initio. During the pendency of defendant's appeal, the Illinois General Assembly passed Public Act 90-590 (Pub. Act 90-590, Art. 2001, § 2001-10, eff. January 1, 1999), the Juvenile Justice Reform Act (705 ILCS 405/5-750 (West 1998)),[3] which replaced the unconstitutional mandatory commitment statute with an identical mandatory commitment provision. In analyzing whether resentencing is mandated in the present case, this court must determine the applicable statute to defendant's disposition.
Defendant initially contends that this court should follow the ruling in In re G.O., which found that the respondent no longer was subject to a mandatory sentencing requirement because Public Act 88-680 was void ab initio (191 Ill.2d at 43, 245 Ill.Dec. 269, 727 N.E.2d 1003), and *184 that this case should be remanded for a new dispositional hearing under the statute in effect prior to Public Act 88-680. The supreme court in In re G.O. explained that when an act is found void ab initio, "the state of the law is as if the act had never been passed." 191 Ill.2d at 43, 245 Ill.Dec. 269, 727 N.E.2d 1003; People v. Tellez-Valencia, 188 Ill.2d 523, 525, 243 Ill.Dec. 191, 723 N.E.2d 223 (1999); see also People v. Gersch, 135 Ill.2d 384, 390, 142 Ill.Dec. 767, 553 N.E.2d 281 (1990). Therefore, defendant argues, the applicable statute in this case is the statute in effect prior to the enactment of Public Act 88-680, which does not require mandatory commitment time.
The State relies on First of America Trust Co. v. Armstead, 171 Ill.2d 282, 289, 215 Ill.Dec. 639, 664 N.E.2d 36 (1996) (Armstead), in asserting that the mandatory commitment provision recently enacted in Public Act 90-590 should apply in this case because it is the law in effect during the pendency of defendant's direct appeal. The supreme court in Armstead explained, "[w]here the legislature changes the law pending an appeal, the case must be disposed of by the reviewing court under the law as it then exists, not as it was when the judgment was entered by the lower court." 171 Ill.2d at 289, 215 Ill.Dec. 639, 664 N.E.2d 36, quoting Bates v. Board of Education, Allendale Community Consolidated School District No. 17, 136 Ill.2d 260, 268-69, 144 Ill.Dec. 104, 555 N.E.2d 1 (1990). An exception to this rule exists where the application of the change in the law would affect a vested right.[4]Envirite Corp. v. Illinois Environmental Protection Agency, 158 Ill.2d 210, 215, 198 Ill.Dec. 424, 632 N.E.2d 1035 (1994). Armstead, 171 Ill.2d at 290, 215 Ill.Dec. 639, 664 N.E.2d 36. Therefore, the State argues, this court should apply the law as it exists at the time of appeal.[5] The State's reliance on Armstead in this case is misplaced.
In Armstead, the supreme court had to determine whether a statutory amendment to a civil statute applied to an existing controversy on appeal, not a criminal statute newly created to replace an unconstitutional act. Plaintiff in Armstead *185 sought to register three underground storage tanks with the office of the State fire marshal. 171 Ill.2d at 284, 215 Ill. Dec. 639, 664 N.E.2d 36. The State fire marshal denied plaintiff's request for registration and plaintiff sought administrative review in the circuit court. During the pendency of the review, the Illinois General Assembly amended the Gasoline Storage Act (430 ILCS 15/4(b)(1)(A) (West Supp.1993)) to provide that underground storage tanks taken out of operation before January 2, 1974 could not be registered. The circuit court applied the amended statute and confirmed the decision of the fire marshal. In holding that the court properly applied the amended statute, the supreme court utilized the vested rights approach and explained that where an amendment does not reach back and interfere with vested rights, there is no truly retroactive impact.[6]Armstead, 171 Ill.2d at 289, 215 Ill.Dec. 639, 664 N.E.2d 36.
In the instant case, defendant was given leave to cite People v. Ramsey, 192 Ill.2d 154, 248 Ill.Dec. 882, 735 N.E.2d 533 (2000) (Ramsey) as additional authority. In Ramsey, the jury found defendant guilty of two counts of first degree murder, three counts of attempted first degree murder and one count each of aggravated criminal sexual assault, home invasion and residential burglary. Upon conviction for these offenses, the jury rejected defendant's insanity claim under section 6-2 of the Criminal Code of 1961, as amended by section 15 of Public Act 89-404 (Pub. Act 89-404, eff. August 20, 1995) (720 ILCS 5/6-2 (West 1996)) and determined that defendant was eligible for the death penalty based on the premeditated nature of the crimes. Subsequent to defendant's conviction, in People v. Reedy, 186 Ill.2d 1, 11, 237 Ill.Dec. 74, 708 N.E.2d 1114 (1999), the supreme court held Public Act 89-404 violated the single subject clause of the Illinois Constitution. The Illinois General Assembly enacted a new statute during the pendency of defendant's appeal, Public Act 90-593 (Pub. Act 90-593, § 15, eff. June 19, 1998), which increased the burden of proof that a defendant must meet in order to establish that he was insane at the time of the offense. Public Act 90-593 contained the same revisions to the insanity defense statute originally included in Public Act 89-404, however, Public Act 90-593 did not violate the single subject clause of the Illinois Constitution. Ramsey, 192 Ill.2d at 157, 248 Ill.Dec. 882, 735 N.E.2d 533. The supreme court reversed defendant's convictions and remanded for a new trial under the statute as it existed prior to the enactment of Public Act 89-404, utilizing the former statute's broader definition of insanity and its less stringent burden of proof. Ramsey, 192 Ill.2d at 158-59, 248 Ill.Dec. 882, 735 N.E.2d 533.
In the instant case, similar to Ramsey, the supreme court held a statute unconstitutional for violating the single subject clause of the Illinois Constitution. The statutes here and in Ramsey were declared void ab initio. Applying the new statute in the present case, as in Ramsey, would be retroactive and disadvantage the offender affected by it.
Accordingly, this case must be remanded for resentencing under Public Act 85-601 *186 (Pub. Act 85-601, Art. V, § 5-33, eff. January 1, 1988), the statute in effect prior to the void ab initio Safe Neighborhoods Act. See 705 ILCS 405/5-33 (West 1992).

II
Defendant next asserts that because the Illinois Supreme Court declared Public Act 88-680 void ab initio, the ex post facto determination requires comparison between the current statute, Public Act 90-590, and Public Act 85-601, the statute enacted prior to the Safe Neighborhoods Act. The circuit court sentenced defendant pursuant to Public Act 88-690, which required a five year mandatory commitment. The previous statute did not provide for a mandatory commitment. Public Act 90-590 mandates the same five year commitment as Public Act 88-680 without violating the single subject clause. Essentially, defendant contends that State cannot resurrect Public Act 88-680 for comparison for ex post facto analysis because that statute no longer exists and, moreover, the application of Public Act 90-590 would violate ex post facto laws by subjecting defendant to a more punitive disposition.
The State cites Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (Dobbert), arguing that application of the current statute would not violate ex post facto laws.[7] The State asserts that ex post facto analysis should compare Public Act 90-590 to Public Act 88-680 and, in doing so, the current statute's dispositional provision is exactly the same as the Safe Neighborhood Act's provision in effect at the time that defendant committed the instant offense and pursuant to which defendant was originally sentenced. Thereafter, the State contends, defendant had "fair warning" that the State would seek the exact same disposition for commission of the offense of first degree murder by anyone who fit the statutory conditions. According to the State, application of the identical dispositional provision re-enacted by Public Act 90-590 does not increase the quantum of punishment to which defendant was amenable at the time of the offense and, therefore, does not violate the ex post facto clause.
In Dobbert, defendant was convicted of first-degree murder, second degree murder, child abuse and child torture of his own children. Under the Florida death penalty statute then in effect, the Florida circuit court sentenced defendant to death for first-degree murder. The court had overruled the jury's decision to render a sentence of life imprisonment. Defendant's ex post facto claim challenged the new statute, which changed the function of judge and jury in the imposition of the death sentences in Florida between the time he committed the acts charged and the time he was tried for them. Defendant also contended that at the time he acted, there was no valid death penalty statute in effect in Florida and, therefore, *187 his sentence should be vacated. Defendant maintained he should have been sentenced under the previously enacted statute. Dobbert, 432 U.S. at 287, 97 S.Ct. 2290. The Supreme Court upheld the death sentence and explained that the changes in the law allowing the judge to overrule the jury in a death-sentencing hearing were "procedural, and on the whole ameliorative" and, as a result, there was no ex post facto violation. Dobbert, 432 U.S. at 294, 296-97, 97 S.Ct. 2290. In other words, the new law changing the role of the judge and jury in death penalty hearings did not change the quantum of punishment; rather, it changed only the procedure of who would impose the punishment. The new law then, changed procedure, not the penalty. Further, the Supreme Court found the new statute offered defendant more protection than the old statute. Dobbert, 432 U.S. at 296, 97 S.Ct. 2290.
In the instant case, the ex post facto analysis must compare Public Act 90-590 to the statute enacted prior to the unconstitutional Public Act 88-680. Dobbert did not address the question of whether to apply a void ab initio statute in an ex post facto analysis. The State argues that the existence of the statute [Public Act 88-680] serves as an "operative fact" to warn defendant of the penalty that would be imposed on him if he were found guilty of first degree murder. See Dobbert, 432 U.S. at 298, 97 S.Ct. 2290. Here, however, the statute intended to serve as a warning to defendant was declared as never having existed by the Illinois Supreme Court. Therefore, a comparison of Public Act 90-590 to Public Act 88-680 in the present case's ex post facto determination is inappropriate.
In applying Dobbert to the instant case, Public Act 90-590 does not merely effect a procedural change in how juvenile court judges determine dispositions. Instead, the mandatory commitment provision definitively affects the quantum of punishment by mandating a five year sentence to the Department of Corrections with no opportunity for parole, release or furlough before the juvenile's 21st birthday. Consequently, the change in law effectuated by Public Act 90-590 serves to make the disposition for a juvenile found delinquent of first degree murder more burdensome by imposing a determinative commitment, rather than an indeterminative commitment. See Lindsey v. Washington, 301 U.S. 397, 400-02, 57 S.Ct. 797, 81 L.Ed. 1182 (1937) (holding that a change in a sentencing provision that eliminated the minimum sentence and made the former maximum sentence mandatory violated ex post facto laws as applied to petitioner); Barger, 163 Ill.2d at 363, 206 Ill.Dec. 170, 645 N.E.2d 175 (holding that a new provision that excluded inmates from the opportunity to increase good-conduct credit violated ex post facto principles). Therefore, the change in the sentencing law is substantive and not procedural. Applying Public Act 90-590 to this case would be retrospective because it would impose a harsher punishment on behavior that took place prior to the enactment of the new statute.
A recent Illinois case with analogous circumstances held that application of Public Act 90-590 should not have been applied retroactively to the juvenile. In re R.T., 313 Ill.App.3d 422, 432, 246 Ill.Dec. 238, 729 N.E.2d 889 (2000).[8] "[E]ven if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." Weaver v. Graham, 450 U.S. 24, 30-31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In the instant case, applying Public Act 90-590 would be "more onerous" than applying the statute in effect prior to the Safe Neighborhoods Act and, as a result, applying Public Act 90-590 would violate ex post facto principles.
*188 Accordingly, defendant's disposition must be vacated and remanded to the juvenile court for further hearing and disposition as to wardship and custody under section 5-33 of the 1992 Act.
Vacated and remanded.
HOFFMAN and SOUTH, JJ., concur.
NOTES
[1] 705 ILCS 405/5-33(1.5) (West 1996) provides:

"When a minor of the age of at least 13 years is adjudged delinquent for the offense of first degree murder, the court shall declare the minor a ward of the court and order the minor committed to the Department of Corrections, Juvenile Division, until the minor's 21st birthday, without the possibility of parole, furlough, or non-emergency authorized absence for a period of 5 years from the date the minor was committed to the Department of Corrections, except that the time that a minor spent in custody for the instant offense before being committed to the Department shall be considered as time credited towards that 5 year period."
[2] 705 ILCS 405/5-33 (West 1992) states in pertinent part:

"(1) When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections, Juvenile Division, if it finds that * * * (b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent.
(2) The commitment of a delinquent to the Department of Corrections shall be for an indeterminate term which shall automatically terminate upon the delinquent attaining the age of 21 years unless the delinquent is sooner discharged from parole or custodianship is otherwise terminated in accordance with this Act or as otherwise provided for by law."
[3] 705 ILCS 405/5-750(2) (West 1998) states in pertinent part:

"When a minor of the age of at least 13 years is adjudged delinquent for the offense of first degree murder, the court shall declare the minor a ward of the court and order the minor committed to the Department of Corrections, Juvenile Division, until the minor's 21st birthday, without the possibility of parole, furlough, or non-emergency authorized absence for a period of 5 years from the date the minor was committed to the Department of Corrections * * *."
[4] The Armstead court defined vested rights as "interests that are protected from legislative interference by our due process clause." 171 Ill.2d at 289, 215 Ill.Dec. 639, 664 N.E.2d 36; Ill. Const. 1970, art. I, § 2.
[5] The State relied on three other cases that applied the existing law while an appeal was pending. First, in People v. Williams, 301 Ill.App.3d 210, 215, 234 Ill.Dec. 521, 703 N.E.2d 133 (1998) (Williams), the court applied an amended sentencing statute mandating defendant to file a post-sentencing motion to preserve sentencing issues for review. This change in procedural rules did not implicate defendant's vested rights. Williams, 301 Ill. App.3d at 215, 234 Ill.Dec. 521, 703 N.E.2d 133. Williams does not apply in the instant case because substantive law is at issue rather than procedural matters. The State also cites People v. Marshall, 114 Ill.App.3d 217, 233, 70 Ill.Dec. 91, 448 N.E.2d 969 (1983) (Marshall), in which defendant shot the victim shortly before the enactment of a statutory provision providing for a verdict of guilty but mentally ill. The court held that the application of the new statute did not increase the penalty for the offense within the meaning of the ex post facto doctrine, rather, application of the statute merely altered the conditions of confinement of a person imprisoned as a result of a criminal offense. Marshall, 114 Ill. App.3d at 234-35, 70 Ill.Dec. 91, 448 N.E.2d 969. In the present case, application of the new statute does increase the penalty for the offense within the meaning of the ex post facto doctrine because the new statute mandates a five year minimum commitment while the statute in existence prior to Public Act 88-680 imposes no mandatory minimum time. Finally, the State relies on People v. Thiem, 82 Ill.App.3d 956, 958, 38 Ill.Dec. 416, 403 N.E.2d 647 (1980) (Thiem), which applied an amended statute to a defendant who was found not guilty of murder by reason of insanity. The amended statute was not retroactive in its application because it was applied to the finding of insanity at trial, not the commission of the murder. Thiem, 82 Ill.App.3d at 960, 38 Ill.Dec. 416, 403 N.E.2d 647. In the case sub judice, however, application of the new statute would be retroactive in affecting a right which the defendant had acquired as of the effective date of the enactment by requiring him to serve a mandatory minimum sentence.
[6] The Armstead Court stated:

"The application of an amendment to an existing controversy does not necessarily constitute retroactivity. `[A] statute is not retroactive just because it relates to antecedent events, or because it draws upon antecedent facts for its operation.' Instead, this court has defined a retroactive change in the law as `one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already passed.' Where no vested rights are involved, either because they are not yet perfected or because the amendment is procedural in nature, the amendment can be applied to the existing controversy without any retroactive impact." 171 Ill.2d at 289-90, 215 Ill.Dec. 639, 664 N.E.2d 36, quoting United States Steel Credit Union v. Knight, 32 Ill.2d 138, 142, 204 N.E.2d 4 (1965).
[7] The State cites Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (Collins), to illustrate the original meaning of the ex post facto clause as adopted by the Framers of the Constitution:

"[A]ny statute which punishes as a crime an act previously committed, * * * which makes more burdensome the punishment for a crime, after its commission, * * * is prohibited as ex post facto." Collins, 497 U.S. at 42, 110 S.Ct. 2715, quoting Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925); see also U.S. Const., art. I, § 10.
Further, in Barger v. Peters, 163 Ill.2d 357, 360, 206 Ill.Dec. 170, 645 N.E.2d 175 (1994) (Barger), the Illinois Supreme Court explained that the Illinois Constitution's ex post facto clause was to be interpreted in the same manner is provided in the United States Constitution:
"[T]he drafters of our modern constitution intended the Illinois ex post facto clause to do no more than conform to the Federal Constitution's general prohibition on the States. [Citation.] Thus, in construing this State's constitutional provision, we are without a basis to depart from the Supreme Court's construction of the Federal ex post facto clause. [Citation.] And, in fact, this court has long interpreted our own constitutional provision in step with Supreme Court pronouncements."
[8] Petition for Leave to Appeal for In re R.T. was denied on October 4, 2000.